**Julius Paul HARDIE, II, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–01414–CR.**

Court of Appeals of Texas,
Dallas.

Feb. 9, 1990.

Rehearing Denied March 9, 1990.

John H. Hagler, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before STEWART, THOMAS and KINKEADE, JJ.

## OPINION

KINKEADE, Justice.

Julius Paul Hardie, II, appeals his jury conviction for driving while intoxicated ("DWI"). The trial court assessed punishment at 180 days' confinement, probated for twenty-four months, and payment of a $150 fine. In three points of error, Hardie contends that the trial court improperly admitted into evidence the audio portion of a videotape containing his request for counsel and incriminating statements made after his request, and that the State's jury argument improperly shifted the burden of proof to Hardie. Because we find that the admission of the audio portion of the videotape impermissibly penalized Hardie for exercising his state and federally guaranteed privilege against self-incrimination, we reverse and remand this case for further proceedings.

## FACTS

The record reveals that, on October 29, 1987, Farmers Branch police officer Jeff Ashabranner stopped Hardie after observing him drive his automobile over lane dividers while traveling south on Marsh Lane in Dallas County. The officer testified that Hardie slowly exited his automobile and fumbled around for his driver's license. The officer further testified that he detected a strong odor of alcohol on Hardie, and that Hardie had red, bloodshot eyes and failed a balance test. The officer arrested Hardie for suspicion of driving while intoxicated and transported him to the police station, where officers made an audio and visual recording of him.

Hardie moved to suppress the audio portion of the tape, claiming that the statements contained in the audio portion were inadmissible because the police interrogated him after he requested counsel. The trial court denied Hardie's motion, and, over his objection, allowed the State to play for the jury both the audio and visual portions of the tape.

The audio recording reveals that, after having Hardie read aloud from a card, the interrogating officer advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officer also gave him specific statutory warnings, and asked him if he would take the intoxilyzer test. *See* TEX. REV.CIV.STAT.ANN. art. 6701*l*–5, §§ 1, 2 (Vernon Supp.1989). Hardie responded that he wanted to call his mother. The officer allowed Hardie to telephone his mother, and again asked him if he would take the test. Hardie responded, "I am to wait until the lawyer or Mother appears." After the officer informed Hardie that he could not wait, Hardie stated, "I will have to wait for a decision from the lawyer or my mother." Hardie also stated that he did not completely understand his rights because he had never encountered a similar situation, and that he was refusing to take the test "at this time."

The officer informed Hardie that he wanted to ask questions about the offense and asked, "Do you wish to talk to me?" Hardie asked what the questions were. The officer asked Hardie the date and time. He also asked Hardie whether he had been operating a motor vehicle, where he had been, where he was going, when and what he had last eaten, when he had last slept, whether he had been drinking, what he had drunk, and when he had consumed his last drink. Hardie responded to all of the questions.

The officer then asked Hardie to recite the alphabet, which he did with one mistake. At the officer's request, Hardie counted to twenty and backward from thirty, which he did without making a mistake.

## INVOCATION OF RIGHT TO COUNSEL

In his second point of error, Hardie contends that the trial court erred in admitting into evidence the audio portion of the videotape in which he is heard invoking his right to counsel.

The record shows that the police officer who served as the intoxilyzer operator asked Hardie for a breath specimen and warned him of the statutory consequences if he refused. *See* TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, §§ 1, 2 (Vernon Supp.1989). Hardie stated that he wanted to wait for an attorney or his mother, and the officer responded that he was not entitled to an attorney at that time. Hardie repeated his statement that he wanted to wait for an attorney, and stated that he did not fully understand his rights. The officer repeated his statement to Hardie that he was not entitled to counsel before deciding whether to take the intoxilyzer test.

At the guilt/innocence stage of the trial, the jury heard Hardie exercising his constitutional right to counsel. Because the invocation of constitutional rights, such as assistance of counsel, cannot be relied upon as evidence of guilt, the trial court erred in admitting that audio portion of the videotape. *Mifffleton v. State,* 728 S.W.2d 880, 884 (Tex.App.—Austin 1987), *aff'd,* 777 S.W.2d 76 (Tex.Crim.App.1989). To permit the use of such evidence for purposes of incrimination would erode the protections guaranteed by both state and federal constitutions. *Stafford v. State,* 578 S.W.2d 394, 395 (Tex.Crim.App.1978); *Powell v. State,* 660 S.W.2d 842, 845 (Tex.App.—El Paso 1983, no pet.).

## HARM ANALYSIS

We must determine whether the trial court's error was harmless. We must reverse the judgment unless we conclude beyond a reasonable doubt that the error made no contribution to Hardie's conviction or punishment. TEX.R.APP.P. 81(b)(2). The test for harmless error is not whether the trial court could have convicted the defendant without the improperly admitted evidence, but whether a reasonable probability exists that the evidence might have contributed to the conviction or the punishment assessed. *Green v. State,* 727 S.W.2d 263, 267 (Tex.Crim.App.1987); *Maynard v. State,* 685 S.W.2d 60, 67 (Tex.Crim.App. 1985). In determining whether a trial court committed harmful error in admitting improper evidence, we must review the facts and circumstances. *Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986).

The facts and circumstances reveal that Officer Ashabranner testified that he arrested Hardie for suspicion of DWI based on Hardie's operation of the motor vehicle, his actions, and the odor of alcohol on him. The officer also testified that Hardie had not been speeding, that the odor of alcohol on a person does not necessarily mean that he is intoxicated, and that Hardie appeared the same on the videotape as he had appeared in person. Hardie did not sway on the videotape, and did not slur his speech. He responded incorrectly as to the date and time and made mistakes reading aloud from the card and reciting the alphabet, but counted without error. Some of his other responses to the interrogating officer's questions were inconsistent with his testimony at trial.

The facts and circumstances further reveal that, during deliberations, the jury foreman submitted a note to the trial court, informing it that the jury could not reach a unanimous decision. He also submitted a written request for further explanation of the definition of legal intoxication, and questioned whether the defense attorney had seen the videotape before the trial. The trial court responded to each of the jury's communications, stating in a written answer that the jurors had before them all the law and evidence admitted at trial, and instructing them to continue deliberating. They continued deliberations and reached a guilty verdict.

The jury foreman submitted the note stating that the jurors had reached an impasse after they had before them as evidence Hardie's invocation of his right to counsel. The jury foreman submitted the

question about the videotape after submitting his note stating that the jury had reached an impasse. We cannot conclude beyond a reasonable doubt that the jury would have reached the same verdict if the members had not had before them as evidence Hardie's invocation of counsel. We sustain Hardie's second point of error. Because we have so found, we do not reach his first and third points of error. We reverse the trial court's judgment and remand this case for further proceedings.