Julius Paul HARDIE, II, Appellant,

v.

The STATE of Texas, Appellee.

No. 432–90.

Court of Criminal Appeals of Texas.

March 20, 1991.

Rehearing Overruled April 24, 1991.

---

John H. Hagler, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant was convicted by a jury of driving while intoxicated. Tex.Rev.Civ. Stat.Ann. art. 6701*l*–1. The trial court assessed punishment at 180 days confinement in the county jail, probated for two years, and a $150.00 fine. The court of appeals reversed the conviction, holding that the trial court erred in admitting the audio portion of the videotape wherein appellant invoked his right to counsel. *Hardie v. State,* 787 S.W.2d 89 (Tex.App.—Dallas 1990). We granted review to determine the correctness of this holding in light of this Court's recent decision in *Jamail v. State,*

787 S.W.2d 380 (Tex.Cr.App.1990) (per curiam).[1] We will affirm the judgment of the court of appeals.

◼ Appellant was arrested for driving while intoxicated, taken to the police station, and videotaped. While on video, he was given *Miranda*[2] warnings and DWI statutory warnings. *See* Tex.Rev.Civ.Stat. Ann. art. 6701*l*–5. When police asked him to submit to an intoxilyzer, he stated that he would have to wait until either his mother or his lawyer arrived.[3] The officers told him they could not wait for anyone, and again asked him to submit to an intoxilyzer. Appellant again responded that he had to wait for a decision from either his lawyer or his parents. He also said that he was not sure what his rights were. The arresting officer proceeded to ask him to answer some questions. Appellant then made incriminating statements.[4] This was all recorded on videotape and played before the jury over appellant's objections.

Appellant objected by way of written motion to introduction of the audio portion of the videotape on the basis of the appellant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article 1, Secs. 10 and 19 of the Texas Constitution, and Article 38.23, V.A.C.C.P. He also objected by way of written motion that "it is improper to inform a jury of the [appellant's] exercise of his constitutional rights." In support of this motion, he cited *Rezac v. State,* 722 S.W.2d 32 (Tex.App.—Dallas 1986), *rev'd on other grounds,* 782 S.W.2d 869 (Tex.Cr. App.1990), which held it is reversible error to admit the audio portion of a DWI videotape in which the defendant repeatedly requested an attorney,[5] and *Gathright v.*

---

**1.** Tex.R.App.P. 200(c)(3).

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** For a verbatim partial text of what transpired during the videotape, see the Appendix to this opinion.

**4.** As his first ground for review on appeal to the court of appeals, appellant argued that these incriminating statements should have been suppressed because they were the result of custodi-

al interrogation. *See Miffleton v. State,* 777 S.W.2d 76 (Tex.Cr.App.1989). The court of appeals reversed the judgment of the trial court on the basis of appellant's second ground for review, and did not address this first ground.

**5.** We note that the only point upon which this Court reversed *Rezac* was that the defendant's objection was not properly preserved for review. *Rezac,* 782 S.W.2d 869, 871. There, the defense objection at trial had been limited to the issue of probable cause and failed to set forth

*State,* 698 S.W.2d 260 (Tex.App.—Ft. Worth 1985), which held it is reversible error to admit a DWI videotape in which the defendant exercised his right to remain silent.

Appellant reurged his objections at the time the videotape was offered into evidence by the State, again calling the court's attention to his motions and the cases cited therein. The trial court overruled his objections and allowed both the audio and video portions of the tape to be played before the jury. The court of appeals held that admission of the audio portion of the videotape impermissibly penalized appellant for exercising his state and federally guaranteed privilege against self-incrimination. *Hardie,* 787 S.W.2d at 90.

The State contends that the holding by the court of appeals conflicts with *Jamail v. State,* 787 S.W.2d 380 (Tex.Cr.App.1990) (per curiam). In *Jamail,* the defendant complained that it was error to admit his refusal to submit to a breath test because it was based on his inability to first consult with an attorney. He argued that when one's refusal is predicated on the absence of requested counsel, an invalid inference of guilt accompanies the request for counsel. *Id.* at 381. There, this Court held that the refusal to submit to a breath test is admissible regardless of the reason for refusal. *Id.* at 383. We also held that the defendant's ineffectual request for counsel had no probative value and should not have been admitted under Rule 402, Tex.R.Crim. Evid.; but that the error in admitting the request for counsel was harmless because of its lack of probative value and because punishment had been assessed by the trial judge in accordance with a negotiated plea agreement. *Id.*

Appellant argues that *Jamail* is inapplicable because the issue there was whether a refusal to take the breath test was admissible, not whether it was error to show a defendant invoking his right to counsel. We agree that the issue presented in *Jamail* differs from the issue here presented. In *Jamail,* the defendant challenged the admissibility of his refusal to take the breath test, and attempted to use the fact that he had requested counsel as a basis for keeping his refusal out of evidence. In the instant case, appellant challenged the admissibility of his invocation of counsel in and of itself. While the invocation of counsel may have no relevance as regards the State's proffer of a defendant's refusal to take the breath test, a different question is presented when the State has sought to introduce evidence of the request for counsel as evidence of guilt.[6]

As part of its analysis regarding the admissibility of the breath test refusal, however, this Court in *Jamail* did find that one's invocation of the right to counsel does not carry an adverse inference of guilt.[7] *Id.* at 382. In light of this Court's

---

the legal theory argued on appeal, that the audio portion of the videotape should have been suppressed because it showed the defendant invoking his right to counsel. *Id.* at 870.

In the present case, appellant has properly preserved his objection. The objection set out in his written motions and presented to the trial court is the same as argued on appeal. This is apparent from the general grounds proffered for his objection, set out in the text *supra,* together with his specific objection that "it is improper to inform a jury of the [appellant's] exercise of his constitutional rights," and the context of the cases upon which he relied. *See, e.g., Zillender v. State,* 557 S.W.2d 515 (Tex.Cr. App.1977) (general objection is sufficient where the specific ground is apparent from the context); *accord Miffleton v. State,* 777 S.W.2d 76, 78 at n. 9 (Tex.Cr.App.1989).

6. Although the State did not specifically state that it was offering this audio portion of the

videotape as evidence of guilt, no other basis for its admission was propounded by the State and no other basis is apparent from the context of the record.

7. The Court also found that evidence in a DWI case of the accused invoking his right to counsel may in fact be exculpatory and properly admissible "to rebut the inference of guilt that does accompany evidence of one's refusal to submit to the breath test." *Jamail,* 787 S.W.2d 380 at 383. While we agree that evidence of an accused invoking his right to counsel may be admissible when offered by the defendant to *rebut* an inference of guilt, as demonstrating sobriety by virtue of the defendant having the presence of mind to request an attorney in such a situation, the fact remains that evidence of a defendant exercising his right to counsel cannot be used *against* him. In this case, the State was the party offering the evidence, over the appellant's repeated objections, and the only apparent

ultimate holding, that evidence of the request for counsel is not admissible, the aforementioned language in *Jamail* is deemed dicta and does not control disposition of the instant case. Further, the trial in *Jamail* was not to a jury, but was to the court on a negotiated plea of nolo contendere. *Id.* at 380–81. Since it is generally presumed that a trial judge disregarded any inadmissible evidence, the error in admission of such evidence would be harmless, as this Court in *Jamail* ultimately found it to be. *See Miffleton v. State,* 728 S.W.2d 880, 884 (Tex.App.—Austin 1987), *aff'd.,* 777 S.W.2d 76 (Tex.Cr.App.1989). While *Jamail* was correct in concluding the error was harmless under the facts of that case, we disapprove of the broad rationale which suggests that evidence of a request for counsel would always be harmless.

We believe that evidence of an accused invoking his or her right to counsel may indeed be construed adversely to a defendant and may improperly be considered as an inference of guilt. Two courts of appeals have already so held. *See Miffleton v. State,* 728 S.W.2d 880 (Tex.App.—Austin 1987), *aff'd.,* 777 S.W.2d 76 (Tex.Cr.App. 1989); and *Rezac v. State,* 722 S.W.2d 32 (Tex.App.—Dallas 1986), *rev'd on other grounds,* 782 S.W.2d 869 (Tex.Cr.App. 1990). As the Supreme Court stated in the landmark case of *Miranda v. Arizona,* 384 U.S. 436, at 468, n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966), "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

■ Such adverse use of evidence that a defendant invoked a right or privilege which has been granted him, is constitutionally impermissible. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct 2240, 49 L.Ed.2d 91 (1976) (denial of due process to use defendant's post-arrest, post-*Miranda* silence for impeachment purposes). This is true even though the right or privilege was erroneously extended to a defendant, because the requirements of a fair trial make it impermissible to tell a defendant that he has a right, even if erroneously, and then use his exercise of that right against him. *Doyle, id.* 426 U.S. at 618, n. 9, 96 S.Ct. at 2245, n. 9. We therefore hold that evidence of one's invocation of the right to counsel is inadmissible as evidence of guilt, and we overrule any language which may be construed to the contrary in *Jamail.*[8]

■ The court of appeals found that the error in this case, in admitting the audio portion of the videotape, was not harmless error beyond a reasonable doubt. *Hardie,* 787 S.W.2d at 91–92; *see* Tex.R.App.P. 81(b)(2). The court based its conclusion on its review of the facts of the case, and also on two jury notes sent to the trial court during their deliberations. *Id.* at 91. In the first, the jury announced that it had reached an impasse, and in the second, the jury questioned whether defense counsel had seen the videotape prior to trial. Because the jury foreman submitted the question about the videotape after submitting the note that the jury had reached an impasse, the court of appeals found that it could not conclude that the jury would have reached the same verdict if they had not had before them as evidence the audio portion of the videotape wherein appellant invoked his right to counsel. *Id.* at 92. This analysis by the court of appeals is consistent with *Harris v. State,* 790 S.W.2d 568 (Tex.Cr.App.1989), wherein we set out the approach for a reviewing court to take in determining when an error is harmless under Rule 81(b)(2), and we will not disturb this finding by the court of appeals.

Accordingly, we affirm the judgment of the court of appeals.

OVERSTREET, J., not participating.

### APPENDIX

[There were two police officers present in the video room with the appellant. Af-

---

basis upon which the State could have been offering the evidence was on the issue of guilt.

8. As a technical matter, *Jamail* is not contrary to our holding today, as *Jamail* also ruled such evidence inadmissible.

ter brief introductions, the first police officer asks appellant to read his *Miranda* rights from a piece of paper]:[1]

[Appellant reads from the paper]: "I am now being photographed and recorded. I have the right to remain silent and not to make, not to make any statement at all and any statement I make will be used against me at my trial. Any statement I make may be used as evidence against me in court. I have the right to have a lawyer present to advise me prior to and during any questioning. If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning. I have the right to terminate this interview at any time."

.        .        .        .        .

[Officer 1 then reads the *Miranda* rights to Appellant]: "Allright. You are now being photographed and recorded. You have the right to remain silent and not make any statement at all and any statement you make may be used against you at your trial. Any statement you make may be used as evidence against you in court. You have the right to have a lawyer present to advise you prior to and during any questioning. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning. You have the right to terminate this interview at any time." Do you understand your rights sir?

[App]: Yes sir, I do.

[O 1]: Thank you.

[Officer 2 hands Appellant another piece of paper]: If you would go along with me, I'm going to read you your DWI statutory warnings, okay? "You ..., *you are under arrest for the offense of driving while intoxicated.* I request that you submit to taking a specimen of your breath for the purpose of analysis to determine the alcohol concentration or the presence of controlled substances or a drug in your body. If you refuse to give this specimen, that

refusal may be admissible in a subsequent prosecution. Your driver's license, permit, or privilege to operate a motor vehicle will be automatically suspended for ninety days after notice and a hearing, if requested, whether or not you are subsequently prosecuted as a result of this arrest. If you do not possess a license or permit to operate a motor vehicle, you may not be issued a license or permit to operate a motor vehicle for a period of ninety days, after notice and a hearing if requested. Further, you have the right within twenty days after receiving written notice of a suspension or denial of a license or permit, to request in writing a hearing on the suspension or denial. I certify that I have orally informed you of the consequences of a refusal and have provided you with a complete and true copy of the statutory warnings."

Paul, do you understand what I just read to you? (emphasis added)

[App]: Uh-huh.

[O 2]: Okay. Do you want to take the breath test for us?

.        .        .        .        .

[App]: I would like to make a phone call first.

.        .        .        .        .

[Officer 1]: You'll have three minutes to complete your phone call. [Tape ends momentarily while appellant is allowed to make a phone call] Okay, the recorder's back on.

[App]: What am I supposed to do now?

[O 1]: You'll be advised, sir, stay where you are.

[App]: Allright.

[Officer 2]: Okay, Mr. Hardie, we did allow you a phone call. I need to ask you, do you wish to submit to a breath test?

[App]: I am to wait until the lawyer or my mother appears.

[O 2]: Okay, sir, we ... we cannot wait for that. We allowed you a phone call, to contact someone. You did make a phone call, and you did complete a phone call.

---

**1.** All material appearing in brackets is information provided by the writer and is not a part of the videotape.

We need an answer, if you want to take the test or not.

[App]: The test will have to wait.

.     .     .     .     .

[Officer 1]: Now, the officer's explained, we will not wait for anyone. If you don't give us an answer right now, we will take that as a refusal, and that's how we're gonna file it. So you need to give this officer an answer now—yes or no?

[App]: Will my statement be on the tape?

[O 1]: Yes sir, you're being recorded right now.

[App]: Thank you. Um, I will have to wait for a decision from either my lawyer or my parents, because I have no idea. Um, I've never dealt with this situation before.

.     .     .     .     .

[App]: I am not *refusing*, particularly, the request for the breathalyzer, but I am refusing at this *time.*

[Officer 2]: Okay, it's refused. Do you wish to sign this for me?

[App]: Um, I do not know my legal routes.

[O 2]: You was [sic] advised of your rights, is that correct?

[App]: Yes I was.

[O 2]: Okay, and do you understand your rights?

[App]: Um, I've never dealt with this situation before, so I do not know my specific situation.

[O 2]: Okay, it's up to you. Do you, you . . .

[App]: No, I . . . I am aware that I am charged with driving while intoxicated, but I do not feel that I am, nor do I know how to respond to the situation.

.     .     .     .     .

[O 2]: I'm gonna ask you one more time. I'll give you the . . . it's up to you.

[App]: I really do not know what to do.

[O 2]: Okay.

.     .     .     .     .

[O 2]: Okay Paul, I have a few questions I need to ask you. You know, having your *Miranda* rights in mind, do you wish to talk to me about them? It's just pertaining, you know, to the actual events of the DWI.

[App]: Well, uh, what are you specifically asking?

[O 2]: Okay, it's the only question I need for this sheet is . . . what day is it?

[App]: It's Wednesday, the um . . . I'm terrible at days. At least 27th or 8th.

[O 2]: Okay.

[App]: I'm terrible at days. Tomorrow's Thursday. I have class at 9:30.

[O 2]: What time is it?

[App]: What time is it? [Appellant reaches into his pocket to get his watch]

[O 2]: Without looking at your watch.

[App]: Um, about 2:00 probably, by now.

[O 2]: About 2:00?

[App]: Maybe 2:30, 2:15. [Appellant looks at his watch] Okay, 4:00 in the morning. Excuse me.

[O 2]: Were you involved in an accident?

[App]: No, I was not.

[O 2]: Were . . . were you operating a motor vehicle?

[App]: Yes I was. I was driving my automobile.

.     .     .     .     .

[O 2]: When did you last eat?

[App]: When did I last eat? About 9:30.

[O 2]: What'd you have?

[App]: I had chicken parilla and, uh, chili con queso. Um, I also had an appetizer of nachos.

[O 2]: Have you been drinking?

[App]: Yes.

[O 2]: What?

[App]: I have had one beer and two frozen margaritas.

[O 2]: How much total? How many drinks total?

[App]: Three drinks.

[O 2]: When did you have your last drink?

[App]: About, let's see, by now probably about an hour ago.

.    .    .    .    .

[Officer 1]: Okay, we'll complete the recording. You need to step outside with this officer.

[App]: What if we just stayed on the recording.

[End of Tape]