welch 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS



AT AUSTIN



_______________________




NO. 3-90-292-CR




JUDY LYNN WELCH,



 APPELLANT


vs.



THE STATE OF TEXAS,



 APPELLEE



_______________________



FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY


NO. 19,112, HONORABLE TIMOTHY G. MARESH, JUDGE


_______________________




 Over a plea of not guilty, the jury found Judy Lynn Welch guilty of the
misdemeanor offense of driving while intoxicated. The jury assessed punishment of 30 days in
jail and a $1,000.00 fine. All jail time and $900.00 of the fine were ordered probated for six
months. Welch appeals the admission into evidence of her refusal to take sobriety tests. We will
affirm her conviction.


THE CONTROVERSY



 A Department of Public Safety trooper testified that while on patrol on November
15, 1987, he saw an approaching automobile weaving on the roadway. The trooper stopped the
car. He smelled alcohol on the breath of the driver, Welch, and requested that she submit to field
sobriety tests. Welch declined to do so, and the trooper arrested her for driving while intoxicated.

 Arriving at the Williamson County jail, the trooper took Welch to the "intoxilyzer
room." The trooper there read to Welch the D.W.I. statutory warnings (1) and Miranda (2) warnings. 
Welch refused to give a breath sample for intoxication analysis, and demanded that she be allowed
to have her lawyer present before any testing or questioning. The exchange between Welch and
the trooper was recorded on videotape.

 The trial court allowed the trooper to testify that Welch refused to submit to the
breath test. Welch contends this was reversible error because her refusal was an exercise of her
constitutional rights.


DISCUSSION AND HOLDINGS



 The relevant statute specifically authorizes the introduction into evidence of a
suspect's refusal to take a breath test:


If the person [under investigation for driving while intoxicated] refuses a request
by an officer to give a specimen of breath or blood, whether the refusal was
express or the result of an intentional failure of the person to give the specimen,
that fact may be introduced into evidence at the person's trial.


Tex. Rev. Civ. Stat. Ann. art. 6701l-5 § 3(g) (Supp. 1991). Therefore, if Welch is to prevail,
she must do so on constitutional grounds. See Jamail v. State, 787 S.W.2d 380, 381 (Tex. Crim.
App.), cert. denied, 111 S. Ct. 148 (1990).

 In her first point of error, Welch alleges that the trial court erred, by admitting into
evidence her refusal to take the breath test, because she had invoked her Fifth Amendment right
to remain silent. She apparently contends the trooper's reading of the Miranda warnings to her
rendered article 6701l-5 inapplicable, giving her a right to refuse the breath test without adverse
consequences.

 A suspect has no Fifth Amendment right to refuse to submit to a breath test. South
Dakota v. Neville, 459 U.S. 553, 564 (1983). Nor does the admission into evidence of a suspect's
refusal to take a breath test violate Article 1, § 10 of the Texas Constitution, which protects a
suspect from self-incrimination. Thomas v. State, 723 S.W.2d 696, 705 (Tex. Crim. App. 1986). 
Breath testing involves neither custodial interrogation nor the privilege against self-incrimination. 
McCambridge v. State, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986), cert. denied, 110 S. Ct.
1936 (1990). Therefore, a defendant, "when faced with a decision whether to provide a breath
or blood sample for chemical analysis of alcohol concentration, . . . may not avoid making a
decision by invoking the protection of the Fifth Amendment privilege against self-incrimination
or the prophylactic safeguards of Miranda." Id. at 504. Admitting evidence of Welch's refusal
to take the breath test did not, therefore, violate her right against self-incrimination. We overrule
the point of error.

 In her second point of error, Welch alleges the trial court erred in admitting the
trooper's testimony because Welch had invoked her Sixth Amendment right to counsel. A suspect
has no constitutional right to consult with counsel before deciding whether to submit to a breath
test. Forte v. State, 707 S.W.2d 89 (Tex. Crim. App. 1986) (rejecting an argument based on the
federal constitution); see also Forte v. State, 759 S.W.2d 128 (Tex. Crim. App. 1988) (rejecting
an argument based on the Texas Constitution). The suspect has a constitutional right to consult
with counsel only after the proceedings have reached a "critical stage." Under federal and Texas
law, the critical stage begins only when formal criminal charges are brought against the suspect. 
McCambridge v. State, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989), cert. denied, 110 S. Ct. 1936
(1990); see also Jamail, 787 S.W.2d at 382. (3) Welch refused to submit to the breath test before
formal charges were brought against her. She therefore had no constitutional right to consult with
counsel before deciding to refuse to submit to the breath test. 

 Finally, we understand Welch to argue that the officer's actions misled her into
believing that she had a right to consult with counsel before deciding whether to submit to the
breath test. She contends that the officer's contemporaneous reading of the Miranda warnings and
statutory D.W.I. warnings caused her to believe that the Miranda warnings cloaked her with
certain rights she did not actually have under the law.

 The Court of Criminal Appeals apparently treats this as a factual issue. See Jamail,
787 S.W.2d at 383-84. In Jamail, the appellant also argued that the combination of statutory
D.W.I. warnings and Miranda warnings caused him to believe that he had a right to consult with
counsel before deciding whether to submit to a breath test. The court of appeals dismissed this
contention, stating the appellant presented no evidence that the police officers confused or misled
him. Jamail v. State, 731 S.W.2d 708, 712 (Tex. App. 1987). The Court of Criminal Appeals,
after concluding that the appellant had presented sufficient evidence to raise the issue, concluded
the officer's warnings were sufficiently distinct that the appellant could not reasonably have been
confused. Jamail, 787 S.W.2d at 384. The Court of Criminal Appeals reached this conclusion
by viewing the videotape which recorded the officer's warnings.

 We believe Welch provided enough evidence of confusion to justify our
determining the issue on its merits. She testified she believed, on the basis of the trooper's
statements, that she had a right to speak to an attorney before deciding whether to submit to the
breath test. She also testified she believed she had a right to remain silent in the face of
questioning by the trooper. (4)

 After viewing the videotape, we believe the trooper's statements could not have
misled or confused Welch. In the intoxilyzer room, the trooper read to her the statutorily required
D.W.I. warnings. When he finished reading these, he asked Welch again whether she would
submit to the breath test. She refused. The trooper then read the Miranda warnings.

 It is clear from the videotape that Welch understood she had a right to consult with
her attorney before taking the breath test, but it is just as clear that the trooper's actions did not
create that confusion. Welch unequivocally refused to submit to a breath test after hearing the
D.W.I. warnings but before the trooper began reading the Miranda warnings. We believe Jamail
controls in these circumstances: "The record indicates only that appellant desired to consult with
counsel prior to submitting to the chemical sobriety test, not that the officer's actions or comments
fostered or manifested an ambiguity regarding the appellant's constitutional right to the presence
of an attorney." Jamail, 787 S.W.2d at 384. We overrule the point of error.

 Finding no error in the trial court's action, we affirm the judgment below.


 

 John E. Powers, Justice

[Before Justices Powers, Jones and B. A. Smith]

Affirmed

Filed: November 6, 1991

[Do Not Publish]
1. We understand this to refer to the warnings required by Tex. Rev. Civ. Stat. Ann. art.
6701l-5 § 2(b) (Supp. 1991).
2. Miranda v. Arizona, 384 U.S. 436 (1966); see also Tex. Code Crim. Proc. Ann. art.
38.22 (1979 and Supp. 1991).
3. We note that the Court of Criminal Appeals has recently overruled the broad
language of Jamail in Hardie v. State, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). We
will continue to follow Jamail, however. First, Jamail and Hardie are distinguishable on their
facts, as the Court of Criminal Appeals noted in Hardie. Id. at 321. Second, the Jamail
language which the Court disavowed in Hardie is not relevant to Welch's case. In Jamail, the
Court of Criminal Appeals stated that a suspect's invocation of the right to counsel does not
carry an adverse inference of guilt. The Court in Hardie overruled this language, holding that
evidence of the invocation of a right to counsel is inadmissible as evidence of guilt. 
Therefore, the Court of Criminal Appeals held that the trial court erred by allowing the jury to
view a videotape showing the suspect asking to consult with counsel. Welch has not alleged
that the trial court erred by showing the videotape to the jury; instead, she complains only that
allowing evidence of her refusal to take the breath test violated her constitutional rights.
4. In response to questioning at trial, Welch testified as follows:


Q. Now, after you got to the video and you had this machine going, he
read -- he asked you if you would take the breath test. Do you recall
that?

A. Yes, sir.

Q. And, what did you say?

A. I told him no, that I would not take the breath test. I wouldn't take any
kind of a test without having a lawyer present.

Q. Had he told you that you had a right to your lawyer?

A. Yes, sir, he did.

Q. Did you think you had a right to your lawyer?

A. Yes, I thought I had a right to have a lawyer before they -- before he
did anything.

Q. Based upon what he told you?

A. Yes, sir. 

Q. All right. Were you clear on whether or not he was going to get you a
lawyer in there or that you could call your lawyer or were you
confused?

A. Well, I was confused because I asked several times for a lawyer and he
never -- he didn't tell me I could have one or I couldn't. I mean, he
didn't answer any time that I asked anything about having a lawyer
present. It wasn't --no statement was made that, "Okay, you can go
make a phone call."


 . . . . 


Q. Did you not understand your rights or did you understand your rights?

A. I didn't totally understand because, like I stated on the videotape, I
didn't understand why I wasn't informed that I could have an attorney,
that I didn't have to answer his questions when he stopped me.