COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

 

NO. 2-08-407-CR

 

 

GEORGE PATRICK RAMBO IV                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

------------

 

FROM COUNTY CRIMINAL
COURT NO. 1 OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction








Appellant
George Patrick Rambo IV appeals his conviction for driving while intoxicated
(DWI).  In a single point, he complains
that the trial court abused its discretion and violated his constitutional
rights by admitting the audio portion of his DWI videotape in which a police
officer reads him his Miranda[2]
warnings.  We will affirm.

II.  Factual and Procedural Background

Officer
C.A. Bain of the Fort Worth Police Department saw Rambo run a stop sign at 2:30
one morning.  He followed Rambo and saw
him stop at another stop sign, travel straight into the middle of the
intersection, and then quickly make a wide right turn without signaling.  Officer Bain turned on his overhead lights
and stopped Rambo.  Officer Bain noticed
a moderate odor of alcoholic beverage on Rambo. 
Rambo explained that he was on his way home from the Fox and Hound,
where he had consumed two or three beers. 
Officer Bain saw a spot of blood on Rambo=s pants
and asked about it.  Rambo said he had
been in a fight with his friend at the Fox and Hound.  He declined the officer=s offer to
call an ambulance. 








Because
Officer Bain did not have a video or audio recorder in his patrol car, he
called for backup to record the remainder of the stop.  When backup arrived, Officer Bain asked Rambo
to step out of the car, and the officer began to administer field sobriety
tests.  The horizontal gaze nystagmus
test showed that Rambo=s eyes were tracking unequally,
which indicated a possible head injury. 
Officer Bain asked if Rambo had any head injuries or had recently lost
consciousness, to which Rambo responded that he was Aknocked
out@ during
the fight earlier that night.  After
Rambo again refused medical attention, Officer Bain administered the
walk-and-turn and one-leg-stand tests, both of which Rambo failed.[3]  Officer Bain also had Rambo recite the
alphabet; Rambo paused between two letters and slurred several letters.  Officer Bain arrested Rambo for DWI and took
him to the Fort Worth jail.   

At the
jail, Officer Bain took Rambo to the intoxilyzer room, where the following
events were recorded.  Officer Bain read
Rambo the DIC-24 warnings and asked if he would give a breath specimen.  Rambo asked if he could talk to his parents
first and if he could have a lawyer present; Officer Bain told Rambo that he
had to make the decision on his own.  Rambo
agreed to take the breath test, but before performing any tests, he stated, AI=d like
to reject unless I have a lawyer present. 
I=d like to
talk to my parents first.@ 
The intoxilyzer operator, Officer Martinez, then read Rambo his Miranda
warnings and asked if he wanted to waive his rights, to which Rambo responded
that he did not.  Officer Martinez
concluded the video.








Officer
Bain was the State=s sole witness at trial.  Through his testimony, the State introduced
the videotape of the stop and of the events in the intoxilyzer room.  The jury convicted Rambo of DWI, and the
trial court sentenced him to ninety days=
confinement and a $550 fine.  The trial
court suspended imposition of the jail portion of the sentence and placed Rambo
on two years= community supervision.   

III.  Right to Remain Silent

In his
sole point, Rambo argues that the trial court abused its discretion by allowing
the jury to hear the audio portion of his DWI videotape in which Officer
Martinez read Rambo his Miranda warnings.  Rambo argues that this penalized him for
exercising his Fifth Amendment rights because it led the jury to the
inescapable conclusion that he had exercised his constitutional right to remain
silent. 

A. 
Standard of Review








This
court reviews the trial court=s
decision to admit evidence under an abuse of discretion standard.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  As long as the trial court=s ruling
falls within the zone of reasonable disagreement, we will affirm its
decision.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
The mere fact that a trial court may decide a matter within its
discretionary authority in a different manner than an appellate court would in
a similar circumstance does not demonstrate that an abuse of discretion has
occurred.  Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003).

B.  Law on
Invocation of Rights as Inference of Guilt

It is
impermissible to penalize an individual for exercising his Fifth Amendment
privilege when he is under police interrogation.  Hardie v. State, 807 S.W.2d 319, 322
(Tex. Crim. App. 1991) (citing Miranda, 384 U.S. at 468, 86 S. Ct. at
1624B25).  AThe
prosecution may not, therefore, use at trial the fact that he stood mute or
claimed his privilege in the face of accusation.@ Miranda,
384 U.S. at 468 n.37, 86 S. Ct. at 1625 n.37 (1966).  This is true even when the right or privilege
was erroneously extended to the defendant because the requirements of a fair
trial make it impermissible to tell a defendant that he has a right, even if he
does not, and then use his exercise of that right against him.   Hardie, 807 S.W.2d at 322.  To permit the use of this evidence for
purposes of incrimination would erode the protection guaranteed by both the
state and federal constitutions.  Dumas
v. State, 812 S.W.2d 611, 614 (Tex. App.CDallas
1991, pet. ref=d).  The danger lies in the possibility that a
jury may adversely or improperly consider such an invocation as an inference of
guilt.  See Hardie, 807 S.W.2d at
322. 








 The audio portion of a sobriety test
videotape, however, is not per se inadmissible. 
Jones v. State, 795 S.W.2d 171, 175 (Tex. Crim. App. 1990). It
serves such legitimate purposes as (1) providing a general interpretive aid to
the visual record, (2) allowing the jury to evaluate the quality of the suspect=s speech
and his loss of mental or physical faculties at the time of arrest, and (3)
allowing the jury to hear the suspect=s
volunteered statements.  Id. at
175. Moreover, Aaudio tracks from DWI videotapes
should not be suppressed unless the police conduct depicted expressly or
impliedly calls for a testimonial response not normally incident to arrest and
custody or is conduct the police should know is reasonably likely to elicit
such a response.@ 
Id. at 176.

The
Fifth Amendment is not implicated if there is no custodial interrogation.  Griffith v. State, 55 S.W.3d 598, 603
(Tex. Crim. App. 2001); see Jones, 795 S.W.2d at 176.  Thus, in deciding whether to admit the audio
portion of a videotape in a custodial setting, it is necessary to determine whether
the evidence involves compelled testimony resulting from interrogation.  Miffleton v. State, 777 S.W.2d 76, 81B82 (Tex.
Crim. App. 1989).   Police requests to
perform sobriety tests, directions on how to perform the tests, and queries
concerning a suspect=s understanding of his rights do
not constitute interrogation.  See
Jones, 795 S.W.2d at 176 (noting that requests for breath specimens seek
physical evidence, not testimonial confessions of guilt).








C.  Audio
Portion of Rambo=s DWI Videotape

Here,
the videotape of the events in the intoxilyzer room shows that when Rambo was
asked to provide a breath specimen, he replied that he would like to talk to
his parents first.  Officer Bain
responded that he could not do so at that time. 
Rambo asked if a lawyer could be present; the officer responded that he
had to make this decision on his own. 
Rambo asked, ASo I can=t have a
lawyer?@  Officer Bain again told him that he had to
decide on his own whether to give a breath specimen.  Rambo then consented to the breath test.
Officer Martinez asked Rambo to step back against the wall and announced, AThis will
be the walk and turn evaluation.@  The following exchange then took place:

Rambo: Can I ask you a question?

 

Officer Martinez: Sure.  

 

Rambo: Um, if I don=t have a lawyer present, is that ok?

 

Officer Martinez: I can=t advise you.

 

Rambo: Huh?

 

Officer Martinez: I can=t advise you about an attorney.

 

Rambo: Can I reject unless I have a lawyer present?

 

Officer Martinez: It=s, uh, it=s totally up to you.

 

. . . .








Rambo: I mean, I=d like to reject unless I
have a lawyer present.  I=d like to talk to my
parents first.

 

Officer Martinez: Ok, I need for you to stand on the white AX@ again.

 

Rambo: Yes, sir.

 

Officer Martinez: This is the video of George Patrick Rambo IV. Date
of birth 12/08/84.  By intoxilyzer
operator [unintelligible] Martinez, Jr., ID number 19978.  Statutory warning read by Officer Bain,
initial C.  Mr. Rambo, at this time I
will be reading to you the Miranda warning, which is your rights. . . . 

 

Officer Martinez proceeded to
read Rambo the Miranda warnings. 
He then asked if Rambo understood his rights; Rambo responded that he
did.  Officer Martinez asked if he wished
to waive those rights and answer questions without an attorney present; Rambo
responded that he did not.  Officer
Martinez stated, AThis concludes the video of
George Patrick Rambo IV,@ and he turned off the
videotape.  

In a
pretrial hearing, Rambo=s defense counsel objected to Athe
entire sound on the entire tape.@  The trial court ruled that the audio could be
played up until the officer read the Miranda warnings:

I=m going
to find on this that since he does not have the right to counsel at that point
until the Miranda is read and at that point they will be turning the sound
off.  But that he doesn=t have a
right to counsel at that point, and so I=m not
going to make them turn the video sound off untilC








At
trial, and prior to the State playing the tape for the jury, defense counsel
reasserted his objection and requested that the court reporter write down Athe
actual word verbiage@ that was played to the
jury.  The trial court simply responded
that the videotape would be available for this court.  Thus, we do not have a transcript of the
exact audio that the jury heard.[4]


However,
the record does provide some indication of exactly what portion of the audio
the jury heard.  After the tape was
played at trial, defense counsel objected,     

Your Honor, the State of Texas
played the tape to the point where they said, >We are
now going to read you your Miranda warnings.= Your
Honor, that is not admissible according to the rule on that.  It is an implication to the jury . . . by the
State on his invocation of his right to remain silent, and we object.  [Emphasis added.]  








The State responded that the
reading of Miranda warnings can be played for the jury, and the trial
court overruled Rambo=s objection.  Based on the arguments of counsel and the
trial court=s pretrial ruling, the record
demonstrates that the tape was muted or stopped after Officer Martinez either
(1) told Rambo that he would be reading the Miranda warnings Aat this
time@ or (2)
actually read the Miranda warnings to Rambo.  It is undisputed that the jury did not hear
the audio of Officer Martinez asking Rambo if he understood his rights and if
he wanted to waive them or of Rambo answering that he did not wish to waive his
rights.  

We will
assume for purposes of our analysis that the tape was muted after Officer
Martinez read Rambo the Miranda warnings.  Thus, the issue is whether the audio portion
of Rambo=s DWI
videotape that was played for the juryCup to
and including the reading of the Miranda warningsCAled the
jury to the inescapable conclusion that [Rambo] exercised his constitutional
privilege to remain silent.@  Dumas, 812 S.W.2d at 614.  Applying existing case law, we hold that it
did not.  








Rambo
relies on Hardie to support his position.  In Hardie, the jury heard audio of the
defendant receiving the Miranda warnings and then requesting to speak with
an attorney or his mother before he would submit to a breath test.  See 807 S.W.2d at 319. The court of
criminal appeals held that a jury should not be allowed to hear evidence that a
defendant has invoked his right to counsel, even if the right was erroneously
extended.  See id. at 322.  Thus, Hardie clarified that when
police erroneously extend Miranda rights to a DWI suspect and the
suspect invokes those erroneously-granted rights, the State cannot use the
invocation of those rights at trial as an adverse inference of guilt.  See id.     








But
here, the jury did not hear the audio of Rambo invoking his Miranda
rights after they had been extended to him.  To the extent that the jury heard Rambo
request an attorney prior to being read his Miranda warnings, his Fifth
Amendment right to counsel had not yet attached because, at that time, the
officers=s
requests and directives to Rambo had not risen to the level of custodial
interrogation.[5]
 See Griffith, 55 S.W.3d at 603; Jones,
795 S.W.2d at 176.  The jury did not hear
the officer ask Rambo whether he understood his rights or whether he desired to
waive those rights.  But cf. Kalisz v.
State, 32 S.W.3d 718, 723 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d)
(holding as erroneous admission of audio in which officer asked defendant if he
understood his right to counsel when jury also saw appellant shuffle toward
door after being questioned and then heard officer ask if he was terminating
interview before tape stopped); Dumas, 812 S.W.2d at 614 (finding error
when jury heard audio of officer reading defendant Miranda warnings and
asking if he wished to waive those rights). 
Based on the facts of this case, we hold that the videotape played to
the juryCincluding
the audio of Officer Martinez reading Rambo his Miranda warningsCdid not
lead the jury to the inescapable conclusion that Rambo had exercised his
constitutional privilege to remain silent. 
See Mathieu v. State, 992 S.W.2d 725, 729 (Tex. App.CHouston
[1st Dist.] 1999, no pet.) (op. on reh=g) (A[T]he
reading of Miranda warnings by themselves are not suppressible, unless
the reading in conjunction with the turning down of the audio could lead the
jury to the conclusion that the defendant invoked his rights.@);  see also Seifert v. State, No.
05-96-01634-CR, 1999 WL 570963, at *2 & n.2 (Tex. App.CDallas
1999, no pet.) (not designated for publication) (holding that allowing jury to
hear officer giving Miranda warnings was not erroneous but noting that
the Abetter
practice@ would
be to exclude warnings).  Consequently,
we conclude that the trial court did not abuse its discretion by admitting the
audio portion of Rambo's DWI videotape during which Officer Martinez read Rambo
the Miranda warnings.  See Green,
934 S.W.2d at 101B02.  We overrule Rambo=s sole
point.

 

 

 

 








IV.  Conclusion

Having
overruled Rambo=s sole point, we affirm the
trial court=s judgment.

 

SUE WALKER

JUSTICE    

 

PANEL: WALKER, MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: March 25, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Miranda v. Arizona, 384 U.S. 436, 444, 86
S. Ct. 1602, 1612 (1966). 





[3]Officer Bain testified
that he did not know whether a recent head injury would affect a person=s balance and,
consequently, the person=s performance on the
walk-and-turn and one-leg-stand tests. 
The officer said that his training taught him only that weight and age
can affect performance on these tests. 





[4]On appeal, Rambo and the
State both agree that the record is unclear as to what portion of the videotape
the jury heard; the State argues that, consequently, Rambo failed to preserve
error.  But defense counsel=s specific objection is
on the record, and he even requested a written transcript of the audio played
to the jury.  We decline to hold that
Rambo has not preserved error.  See
Lajoie v. State, 237 S.W.3d 345, 352 (Tex. App.CFort Worth 2007, no pet.)
(holding defendant preserved error when record unclear as to what portions of
video jury heard but clear as to what portions defendant objected to).  





[5]Rambo does not challenge
on appeal the admissibility of the audio portion of his DWI videotape
documenting his post-arrest, pre-Miranda requests for counsel.