

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-407-CR

GEORGE PATRICK RAMBO IV                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant George Patrick Rambo IV appeals his conviction for driving while intoxicated (DWI). In a single point, he complains that the trial court abused its discretion and violated his constitutional rights by admitting the

---

[1] *... See* Tex. R. App. P. 47.4.

audio portion of his DWI videotape in which a police officer reads him his *Miranda*[2] warnings.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Officer C.A. Bain of the Fort Worth Police Department saw Rambo run a stop sign at 2:30 one morning.  He followed Rambo and saw him stop at another stop sign, travel straight into the middle of the intersection, and then quickly make a wide right turn without signaling.  Officer Bain turned on his overhead lights and stopped Rambo.  Officer Bain noticed a moderate odor of alcoholic beverage on Rambo.  Rambo explained that he was on his way home from the Fox and Hound, where he had consumed two or three beers.  Officer Bain saw a spot of blood on Rambo's pants and asked about it.  Rambo said he had been in a fight with his friend at the Fox and Hound.  He declined the officer's offer to call an ambulance.

Because Officer Bain did not have a video or audio recorder in his patrol car, he called for backup to record the remainder of the stop.  When backup arrived, Officer Bain asked Rambo to step out of the car, and the officer began to administer field sobriety tests.  The horizontal gaze nystagmus test showed that Rambo's eyes were tracking unequally, which indicated a possible head

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

injury.  Officer Bain asked if Rambo had any head injuries or had recently lost consciousness, to which Rambo responded that he was "knocked out" during the fight earlier that night.  After Rambo again refused medical attention, Officer Bain administered the walk-and-turn and one-leg-stand tests, both of which Rambo failed.[3]  Officer Bain also had Rambo recite the alphabet; Rambo paused between two letters and slurred several letters.  Officer Bain arrested Rambo for DWI and took him to the Fort Worth jail.

At the jail, Officer Bain took Rambo to the intoxilyzer room, where the following events were recorded.  Officer Bain read Rambo the DIC-24 warnings and asked if he would give a breath specimen.  Rambo asked if he could talk to his parents first and if he could have a lawyer present; Officer Bain told Rambo that he had to make the decision on his own.  Rambo agreed to take the breath test, but before performing any tests, he stated, "I'd like to reject unless I have a lawyer present.  I'd like to talk to my parents first."  The intoxilyzer operator, Officer Martinez, then read Rambo his *Miranda* warnings and asked

---

[3] Officer Bain testified that he did not know whether a recent head injury would affect a person's balance and, consequently, the person's performance on the walk-and-turn and one-leg-stand tests. The officer said that his training taught him only that weight and age can affect performance on these tests.

if he wanted to waive his rights, to which Rambo responded that he did not. Officer Martinez concluded the video.

Officer Bain was the State's sole witness at trial. Through his testimony, the State introduced the videotape of the stop and of the events in the intoxilyzer room. The jury convicted Rambo of DWI, and the trial court sentenced him to ninety days' confinement and a $550 fine. The trial court suspended imposition of the jail portion of the sentence and placed Rambo on two years' community supervision.

### III.  RIGHT TO REMAIN SILENT

In his sole point, Rambo argues that the trial court abused its discretion by allowing the jury to hear the audio portion of his DWI videotape in which Officer Martinez read Rambo his *Miranda* warnings. Rambo argues that this penalized him for exercising his Fifth Amendment rights because it led the jury to the inescapable conclusion that he had exercised his constitutional right to remain silent.

### A.  Standard of Review

This court reviews the trial court's decision to admit evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the

trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### B. Law on Invocation of Rights as Inference of Guilt

It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police interrogation. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) (citing *Miranda*, 384 U.S. at 468, 86 S. Ct. at 1624–25). "The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda*, 384 U.S. at 468 n.37, 86 S. Ct. at 1625 n.37 (1966). This is true even when the right or privilege was erroneously extended to the defendant because the requirements of a fair trial make it impermissible to tell a defendant that he has a right, even if he does not, and then use his exercise of that right against him. *Hardie*, 807 S.W.2d at 322. To permit the use of this evidence for purposes of incrimination would erode the protection guaranteed by both the state and federal constitutions. *Dumas v. State*, 812 S.W.2d 611, 614 (Tex. App.—Dallas 1991, pet. ref'd). The danger lies in the possibility that a jury

may adversely or improperly consider such an invocation as an inference of guilt. *See Hardie*, 807 S.W.2d at 322.

The audio portion of a sobriety test videotape, however, is not per se inadmissible. *Jones v. State*, 795 S.W.2d 171, 175 (Tex. Crim. App. 1990). It serves such legitimate purposes as (1) providing a general interpretive aid to the visual record, (2) allowing the jury to evaluate the quality of the suspect's speech and his loss of mental or physical faculties at the time of arrest, and (3) allowing the jury to hear the suspect's volunteered statements. *Id.* at 175. Moreover, "audio tracks from DWI videotapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is conduct the police should know is reasonably likely to elicit such a response." *Id.* at 176.

The Fifth Amendment is not implicated if there is no custodial interrogation. *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001); *see Jones*, 795 S.W.2d at 176. Thus, in deciding whether to admit the audio portion of a videotape in a custodial setting, it is necessary to determine whether the evidence involves compelled testimony resulting from interrogation. *Miffleton v. State*, 777 S.W.2d 76, 81–82 (Tex. Crim. App. 1989). Police requests to perform sobriety tests, directions on how to perform the tests, and queries concerning a suspect's understanding of his rights do not constitute

6

interrogation. *See Jones*, 795 S.W.2d at 176 (noting that requests for breath specimens seek physical evidence, not testimonial confessions of guilt).

### C.   Audio Portion of Rambo's DWI Videotape

Here, the videotape of the events in the intoxilyzer room shows that when Rambo was asked to provide a breath specimen, he replied that he would like to talk to his parents first.  Officer Bain responded that he could not do so at that time.  Rambo asked if a lawyer could be present; the officer responded that he had to make this decision on his own.  Rambo asked, "So I can't have a lawyer?"  Officer Bain again told him that he had to decide on his own whether to give a breath specimen.  Rambo then consented to the breath test. Officer Martinez asked Rambo to step back against the wall and announced, "This will be the walk and turn evaluation."  The following exchange then took place:

Rambo: Can I ask you a question?

Officer Martinez: Sure.

Rambo: Um, if I don't have a lawyer present, is that ok?

Officer Martinez: I can't advise you.

Rambo: Huh?

Officer Martinez: I can't advise you about an attorney.

Rambo: Can I reject unless I have a lawyer present?

7

Officer Martinez: It's, uh, it's totally up to you.

    . . . .

Rambo: I mean, I'd like to reject unless I have a lawyer present. I'd like to talk to my parents first.

Officer Martinez: Ok, I need for you to stand on the white "X" again.

Rambo: Yes, sir.

Officer Martinez: This is the video of George Patrick Rambo IV. Date of birth 12/08/84. By intoxilyzer operator [unintelligible] Martinez, Jr., ID number 19978. Statutory warning read by Officer Bain, initial C. Mr. Rambo, at this time I will be reading to you the *Miranda* warning, which is your rights. . . .

Officer Martinez proceeded to read Rambo the *Miranda* warnings. He then asked if Rambo understood his rights; Rambo responded that he did. Officer Martinez asked if he wished to waive those rights and answer questions without an attorney present; Rambo responded that he did not. Officer Martinez stated, "This concludes the video of George Patrick Rambo IV," and he turned off the videotape.

In a pretrial hearing, Rambo's defense counsel objected to "the entire sound on the entire tape." The trial court ruled that the audio could be played up until the officer read the *Miranda* warnings:

8

I'm going to find on this that since he does not have the right to counsel at that point until the Miranda is read and at that point they will be turning the sound off. But that he doesn't have a right to counsel at that point, and so I'm not going to make them turn the video sound off until—

At trial, and prior to the State playing the tape for the jury, defense counsel reasserted his objection and requested that the court reporter write down "the actual word verbiage" that was played to the jury. The trial court simply responded that the videotape would be available for this court. Thus, we do not have a transcript of the exact audio that the jury heard.[4]

However, the record does provide some indication of exactly what portion of the audio the jury heard. After the tape was played at trial, defense counsel objected,

> Your Honor, the State of Texas played the tape *to the point where they said, 'We are now going to read you your Miranda warnings.'* Your Honor, that is not admissible according to the rule on that. It

---

[4] ... On appeal, Rambo and the State both agree that the record is unclear as to what portion of the videotape the jury heard; the State argues that, consequently, Rambo failed to preserve error. But defense counsel's specific objection is on the record, and he even requested a written transcript of the audio played to the jury. We decline to hold that Rambo has not preserved error. *See Lajoie v. State*, 237 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, no pet.) (holding defendant preserved error when record unclear as to what portions of video jury heard but clear as to what portions defendant objected to).

is an implication to the jury . . . by the State on his invocation of his right to remain silent, and we object. [Emphasis added.]

The State responded that the reading of *Miranda* warnings can be played for the jury, and the trial court overruled Rambo's objection. Based on the arguments of counsel and the trial court's pretrial ruling, the record demonstrates that the tape was muted or stopped after Officer Martinez either (1) told Rambo that he would be reading the *Miranda* warnings "at this time" or (2) actually read the *Miranda* warnings to Rambo. It is undisputed that the jury did not hear the audio of Officer Martinez asking Rambo if he understood his rights and if he wanted to waive them or of Rambo answering that he did not wish to waive his rights.

We will assume for purposes of our analysis that the tape was muted after Officer Martinez read Rambo the *Miranda* warnings. Thus, the issue is whether the audio portion of Rambo's DWI videotape that was played for the jury—up to and including the reading of the *Miranda* warnings—"led the jury to the inescapable conclusion that [Rambo] exercised his constitutional privilege to remain silent." *Dumas*, 812 S.W.2d at 614. Applying existing case law, we hold that it did not.

Rambo relies on *Hardie* to support his position. In *Hardie*, the jury heard audio of the defendant receiving the *Miranda* warnings and then requesting to

speak with an attorney or his mother before he would submit to a breath test. *See* 807 S.W.2d at 319. The court of criminal appeals held that a jury should not be allowed to hear evidence that a defendant has invoked his right to counsel, even if the right was erroneously extended. *See id.* at 322. Thus, *Hardie* clarified that when police erroneously extend *Miranda* rights to a DWI suspect and the suspect invokes those erroneously-granted rights, the State cannot use the invocation of those rights at trial as an adverse inference of guilt. *See id.*

But here, the jury did not hear the audio of Rambo invoking his *Miranda* rights *after they had been extended to him*. To the extent that the jury heard Rambo request an attorney prior to being read his *Miranda* warnings, his Fifth Amendment right to counsel had not yet attached because, at that time, the officers's requests and directives to Rambo had not risen to the level of custodial interrogation.[5] *See Griffith*, 55 S.W.3d at 603; *Jones*, 795 S.W.2d at 176. The jury did not hear the officer ask Rambo whether he understood his rights or whether he desired to waive those rights. *But cf. Kalisz v. State*, 32 S.W.3d 718, 723 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding

---

[5] Rambo does not challenge on appeal the admissibility of the audio portion of his DWI videotape documenting his post-arrest, pre-*Miranda* requests for counsel.

as erroneous admission of audio in which officer asked defendant if he understood his right to counsel when jury also saw appellant shuffle toward door after being questioned and then heard officer ask if he was terminating interview before tape stopped); *Dumas*, 812 S.W.2d at 614 (finding error when jury heard audio of officer reading defendant *Miranda* warnings and asking if he wished to waive those rights). Based on the facts of this case, we hold that the videotape played to the jury—including the audio of Officer Martinez reading Rambo his *Miranda* warnings—did not lead the jury to the inescapable conclusion that Rambo had exercised his constitutional privilege to remain silent. *See Mathieu v. State*, 992 S.W.2d 725, 729 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (op. on reh'g) ("[T]he reading of *Miranda* warnings by themselves are not suppressible, unless the reading in conjunction with the turning down of the audio could lead the jury to the conclusion that the defendant invoked his rights."); *see also Seifert v. State*, No. 05-96-01634-CR, 1999 WL 570963, at *2 & n.2 (Tex. App.—Dallas 1999, no pet.) (not designated for publication) (holding that allowing jury to hear officer giving *Miranda* warnings was not erroneous but noting that the "better practice" would be to exclude warnings). Consequently, we conclude that the trial court did not abuse its discretion by admitting the audio portion of Rambo's DWI

videotape during which Officer Martinez read Rambo the *Miranda* warnings.

*See Green*, 934 S.W.2d at 101–02. We overrule Rambo's sole point.

## IV. CONCLUSION

Having overruled Rambo's sole point, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 25, 2010