Damien Demarquis Huckaby v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-301-CR

DAMIEN DEMARQUIS HUCKABY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I. 
 Introduction

Appellant Damien Demarquis Huckaby appeals his conviction for aggravated kidnapping.  In seven points, he alleges that (1) the statements of an alleged co-conspirator were admitted in violation of the rules of evidence and the right to confrontation; (2) the trial court erred by allowing a witness to testify that Huckaby requested an attorney; (3) the trial court erred by denying his request for the release of juror information and his motion for new trial based on juror misconduct; (4) the trial court erred by admitting extraneous bad act evidence without requiring the State to prove up the purpose for the testimony and by failing to weigh the probative value of the evidence against the danger of unfair prejudice; (5) the trial court erred by denying his motion to suppress a search warrant because the affidavit supporting the warrant lacked probable cause; (6) the trial court erred by refusing to make the State provide adequate notice in the indictment and by allowing the jury to return a verdict using an unproven allegation; and (7) the trial court abused its discretion by refusing to conduct an in camera examination of the State’s file for exculpatory evidence.  We will affirm.

II. 
Factual Background

The victim, Sergeant Elihue Parker, and his wife, Kimberly Parker, were experiencing marital problems and had separated.  On July 27, 2000, Huckaby and Marquis Brown visited Sergeant Parker while he was working at the Marine recruiting station in Lewisville. 
 They wanted to get some personal belongings that were in Sergeant Parker’s car. 
 Huckaby appeared agitated that they had to wait, and he told Sergeant Parker, “Playing all of these kiddie games and stuff with each other, sneaking around.  If we were back in the ‘hood, I would have done capped your ass.”
(footnote: 1)  Ezra Bunnell, a co-worker of Sergeant Parker, heard this exchange.

After Huckaby and Brown left, they went to Kimberly’s apartment.  Over the next few days, Huckaby, along with three other individuals, discussed and planned the kidnapping and killing of Sergeant Parker.

On July 30, 2000, Kimberly called Sergeant Parker and asked him if she could come over that afternoon.  A group of five individuals arrived at Sergeant Parker’s apartment between 4 p.m. and 5 p.m. 
 The four men exited the car before Kimberly drove through the entrance gate so that Sergeant Parker would not see all of them arriving through the complex’s surveillance camera.
  The men proceeded to the outside of Sergeant Parker’s apartment, and Kimberly met them there. 
 Kimberly, Huckaby, and another man then went upstairs while the other two men waited.

A struggle broke out between Sergeant Parker, Huckaby, and the other man. 
 Huckaby signaled the two waiting men to join them and help them gain control of the situation. 
 Once they gained control of Sergeant Parker, they tied him up with some green ribbon from one of his military swords and put him in the trunk of Huckaby’s car. 
 Huckaby dropped Kimberly off at a friend’s home and then drove to East Texas. 
 He stopped twice along the way to buy duct tape and Saran Wrap. 
 He then dropped Brown off at his girlfriend’s home in Gladewater, Texas.

In August of 2000, Sergeant Parker’s tied-up body was discovered in the Sabine River.  His body was wrapped in plastic wrap and covered with a sheet secured by duct tape.  During an autopsy, the medical examiner discovered a single gunshot wound in Sergeant Parker’s chest and determined the cause of death to be homicide.

Huckaby pleaded not guilty to aggravated kidnapping, but the jury convicted him of the offense.  He was sentenced to life imprisonment. 
 He appeals this conviction.

III.  
Discussion

A. 
Statements of Co-conspirator

In his first point, Huckaby contends that the statements of Brown, an alleged co-conspirator, were admitted in violation of the hearsay rules of evidence and the right to confrontation.  The State responds that the trial court properly admitted the testimony under Texas Rule of Evidence 801(e)(2)(E).  
Tex. R. Evid
. 801(e)(2)(E).

A trial court has discretion to determine the admissibility of statements under the co-conspirator rule.  
Legate v. State
, 52 S.W.3d 797, 803 (Tex. App.—San Antonio 2001, pet. ref’d).  A statement is not hearsay if it is offered against a party and was made by a co-conspirator of a party during the course and in furtherance of the conspiracy.  
Id
.  The out-of-court statement by a co-conspirator must be more than merely related to the conspiracy, it must further the conspiracy.  
Williams v. State
, 790 S.W.2d 643, 645 (Tex. Crim. App. 1990).  A statement only furthers a conspiracy if it advances the cause of the conspiracy or serves to facilitate it.  
Deeb v. State
, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991), 
cert. denied
, 505 U.S. 1223 (1992).

Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators; (2) with intent to induce another to join the conspiracy; (3) in formulating future strategies of concealment to benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) for the purpose of identifying the role of one conspirator to another.  
Lee v. State
, 21 S.W.3d 532, 538 (Tex. App.—Tyler 2000, no pet.) (citing 
Fairow v. State
, 920 S.W.2d 357, 362 (Tex. App.—Houston [1
st
 Dist.] 1996), 
aff’d
, 943 S.W.2d 895 (Tex. Crim. App. 1997)).  Conversely, statements that are not in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) “puffing” or “boasting” by co-conspirators.  
Id
.

Here, Huckaby argues that Brown’s statements were inadmissible because Brown testified that the plan was formed before he arrived at Kimberly’s apartment and was related to him by the co-conspirators.  Therefore, Huckaby argues, the statements to Brown did not further the conspiracy. 

Brown, however, testified at trial that “from the conversations that they were having, you could already tell it was an on-going process and that wasn’t the first or the last conversation.”  He admitted he was present when the murder and kidnapping were planned. 
 During the hearing on Huckaby’s supplemental motion in limine, Brown testified that the discussions concerning the kidnapping and murder of Sergeant Parker took place over a five-day period and said that Huckaby made suggestions about how the plan should be carried out.
  Brown specifically stated that an on-going conversation occurred. 
 It was during these conversations that Huckaby suggested using Saran Wrap to cover up the smell of the body, and the group discussed using duct tape. 

Based on Brown’s testimony, we conclude that the discussions held in his presence were part of an on-going planning process spanning several days, which advanced the cause of the conspiracy.  
See
 
Deeb
, 815 S.W.2d at 697; 
see also
 
Tex. R. Evid
. 801(e)(2)(E) (a statement is not hearsay if it is made by a co-conspirator of a party during the course and in furtherance of the conspiracy).  The discussions were not merely conversations, but formulations of a strategy of concealment intended to benefit the conspiracy to kidnap and murder Sergeant Parker.

Huckaby further argues that the statements were inadmissible because Brown was high on marijuana at the time of the conversations and was unable to attribute the statements to particular speakers.  However, the credibility of a witness is an issue for the jury to decide, and credibility attacks on a witness do not defeat the corroborating effect of the witness’s testimony.  
Solomon v. State
, 49 S.W.3d 356, 362 (Tex. Crim. App. 2001).  As the court’s charge indicated, the jury could not convict Huckaby based upon Brown’s accomplice testimony unless they believed Brown’s testimony was true and found corroborating evidence establishing Huckaby’s guilt. 
 
See
 Tex. Code Crim. Proc. Ann.
 art. 38.14 (Vernon 1979); 
see also Nolley v. State
, 5 S.W.3d 850, 852 (Tex. App.—Houston [14
th
 Dist.] 1999, no pet.).  As the exclusive judge of Brown’s credibility and the weight to be given to his testimony, it was the jury’s task to consider the impact of Brown’s marijuana use upon his perception and recollection of the co-conspirators’ statements.  
See Williams v. State
, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).  Thus, evidence that Brown was high on marijuana during the discussions goes to the weight of Brown’s testimony, not its admissibility.

Finally, each declaration or act of a co-conspirator up until the object of the conspiracy is complete is admissible.  
Helms v. State
, 493 S.W.2d 227, 230 (Tex. Crim. App. 1973); 
Callaway v. State
, 818 S.W.2d 816, 831 (Tex. App.—Amarillo 1991, pet. ref’d).  
Although Brown was unable to match each statement with its source during the conversations in question, he identified each person who was present during the conversations, stated that every member of the group discussed the plan to kidnap and murder Sergeant Parker, and testified that Huckaby suggested using Saran Wrap to mask the smell of the body’s decomposition.  Thus, Brown’s testimony confirmed that Huckaby acted as a co-conspirator by making suggestions about how the kidnapping and murder should be carried out.  We conclude that this testimony, in conjunction with other corroborating evidence, was admissible to assist the jury in determining Huckaby’s role in the kidnapping and murder of Sergeant Parker.

Because the complained-of statements were made by co-conspirators in furtherance of the conspiracy, Brown‘s statements were admissible under rule 801(e)(2)(E), and the trial court did not abuse its discretion by allowing the testimony.
(footnote: 2)
 Because the testimony is admissible under rule 801(e)(2)(E), we need not address Huckaby’s rule 803(24) point.  We will, however, address his complaint that the testimony violated his right of confrontation.

Statements that are “firmly rooted” exceptions to the hearsay rule are per se reliable under the Confrontation Clause.  
Idaho v. Wright
, 497 U.S. 805, 817, 110 S. Ct. 3139, 3147 (1990).  In 
Bourjaily v. United States
, the Court held that admission of the statements of co-conspirators under Federal Rule of Criminal Evidence 801(d)(2)(E), which is the same as our rule 801(e)(2)(E), does not violate a defendant’s rights under the Confrontation Clause and that no independent inquiry into reliability is required.  483 U.S. 171, 182-84, 107 S. Ct. 2775, 2782 (1987).  Thus, Huckaby’s right of confrontation was not violated.  
See
 
Bailey v. State, 
804 S.W.2d 226, 231 (Tex. App.—Amarillo 1991, no pet.).
  
Accordingly, Huckaby’s first point is overruled.

B. 
Request for Attorney

In his second point, Huckaby alleges that the trial court abused its discretion by allowing a witness, Detective Eddie Barrett, to testify that he requested an attorney.  Specifically, Huckaby argues that this testimony violated his Sixth Amendment right to counsel and created an improper inference of his guilt.
(footnote: 3)  The State responds that the testimony was proper because Huckaby did not have a Sixth Amendment right to counsel.

The right to counsel clause of the Sixth Amendment to the United States Constitution protects an accused’s right to counsel “only at or after the time that adversary judicial proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.” 
Griffith v. State
,
 
55 S.W.3d 598, 603 (Tex. Crim. App. 2001).  A person has not become an “accused” within the meaning of the Sixth Amendment simply because he has been detained by the government with the intention of filing charges against him.  
Id
. at 603-04.

Here, when defense counsel took Detective Barrett on voir dire, he testified that when he went to Kimberly’s apartment, Huckaby was not a suspect in a crime.  Detective Barrett was simply investigating a missing person report.  He asked Kimberly and the other men in the apartment for identification and then photographed them with a Polaroid camera. 
 Huckaby did not complain about the picture until after Detective Barrett had taken it. 
 Huckaby then said, “You can’t take my photograph.  I will talk to my--. . . I will call my attorney.” 
 Because the State had not filed any charges against Huckaby when he made the statement, formal adversary judicial proceedings had not started. 
See id
 at 603.  Thus, his Sixth Amendment right to counsel had not yet attached.  
Id
.

Furthermore, Huckaby’s reliance on a sentence from 
Hardie v. State
 is misplaced.  
807 S.W.2d 319, 322 (Tex. Crim. App. 1991).  Huckaby contends that, under 
Hardie
, it is improper to tell the jury that a defendant has invoked his right to counsel because it creates an inference of guilt. 
 Id.  
In 
Hardie
, the Court of Criminal Appeals held that “evidence of one’s invocation of the right to counsel is inadmissible as evidence of guilt . . . .” 
 
Id
.  Hardie’s invocation of counsel, however, came after he had received 
Miranda
 warnings telling him of his right to counsel.  
Id
. at 320; 
see also
 
Griffith
,
 
55 S.W.3d at 604.
  The Court of Criminal Appeals held that the State’s adverse use of evidence that a defendant invoked a right or privilege granted to him is constitutionally impermissible.  
Hardie
, 807 S.W.2d at 321.  As we have discussed, Huckaby’s Sixth Amendment right to counsel had not attached, and police had not advised him of his right to counsel.  Accordingly, 
Hardie
 is inapplicable.

Finally, Huckaby’s statement after he had agreed to be photographed, “I will call my attorney,” was more an after-the-fact expression of his discomfort with being photographed and of his desire not to speak further with Barrett than an invocation of a right.  
See State v. Lee
, 15 S.W.3d 921, 923 (Tex. Crim. App. 2000).  Thus, the trial court did not abuse its discretion by allowing Detective Barrett to testify to Huckaby’s statements concerning his attorney. We overrule Huckaby’s second point.

C. 
Release of Juror Information

In his third point, Huckaby argues that the trial court erred by denying his motion for new trial based on juror misconduct and his request for the release of juror information.  He specifically alleges that during discussions after the verdict, one of the jurors asked whether or not good time credit would apply to the thirty-year minimum sentence.  The State responds that Huckaby failed to show good cause for releasing juror information. 

The court must grant a new trial when the jury has engaged in misconduct that prevented the defendant from receiving a fair or impartial trial. 
Tex. R. App. P
. 21.3(g).  Texas Rule of Evidence 606(b) prohibits an inquiry into the validity of a verdict through jurors’ testimony or affidavits except to prove outside influence was improperly brought to bear upon a juror or to rebut a claim that a juror was not qualified to serve.  
Tex. R. Evid
. 606(b) (stating that juror may not testify as to any matter or statement occurring during deliberations or to effect of anything on juror’s mind, emotions, or mental processes).  An outside influence must come from outside the jury and its deliberations.  
Garza v. State
, 82 S.W.3d 791, 794  (Tex. App.—Corpus Christi 2002, no pet.).  A juror's discussion about the application of the parole law to the defendant's sentence does not constitute an outside influence. 
Richardson v. State
, 83 S.W.3d 332, 361-62  (Tex. App.—Corpus Christi 2002, pet. ref’d); 
Hines v. State
, 3 S.W.3d 618, 621-22 (Tex. App.—Texarkana 1999, pet. ref’d).

Huckaby’s claim that jury misconduct occurred during deliberations goes against established law.  The jury’s deliberation concerning parole law and good time credit is not considered an outside influence that allows for inquiry into the validity of the verdict under rule 606(b).  
Tex. R. Evid
. 606(b); 
see also Richardson
, 83 S.W.3d at 361-62; 
Hines
, 3 S.W.3d at 621-22 (holding that rule 606(b) is not in conflict with appellate rule 21.3).  Therefore, the trial court did not abuse its discretion by denying Huckaby’s inquiry into the validity of the verdict.
(footnote: 4)
 Huckaby further argues that the code of criminal procedure permits disclosure of juror information on a showing of good cause.
  See
 
Tex. Code Crim. Proc. Ann
. art. 35.29 (Vernon Supp. 2003) (“On a showing of good cause, the court shall permit disclosure of the information sought.”).  What constitutes good cause must necessarily be based upon more than a mere possibility that jury misconduct might have occurred.  
Esparza v. State
, 31 S.W.3d 338, 340  (Tex. App.—San Antonio 2000, no pet.).  Good cause must be based on more than mere conjecture; it must have a firm foundation.  
Id
.  

Just as the juror’s question about good time credit does not entitle Huckaby to inquire into the validity of the verdict through juror testimony or affidavits under rule 606(b), it likewise does not constitute good cause requiring the court to disclose the juror’s personal information.  
See
 
Tex. Code Crim. Proc. Ann
. art. 35.29
; Tex. R. Evid
. 606(b)
.  Huckaby asserts no other good cause for disclosure of the jurors’ personal information.  
Thus, we overrule Huckaby’s third point.

D.
 Extraneous Bad Acts

In his fourth point, Huckaby contends that the trial court erred by admitting extraneous bad act evidence without requiring the State to prove up the purpose for the testimony and by failing to weigh the probative value of the evidence against the danger of unfair prejudice.  Specifically, Huckaby objected to the testimony of Bunnell that he heard Huckaby say to Sergeant Parker:  “If we were back in the ‘hood, I would have done capped your ass.”  The State responds that the trial court did not abuse its discretion by admitting the statement because it was relevant to show a partial motive for the aggravated kidnapping.

Evidence of extraneous bad acts is not admissible to prove the character of a person in order to show that the person acted in conformity with that character.  
Tex. R. Evid
. 404(b).  However, such evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
Id
.  The trial court’s decision to admit such evidence is reviewed under an abuse of discretion and will not be reversed as long as it is within the zone of reasonable disagreement.  
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  

When the trial court is faced with a relevancy objection, the proponent of the extraneous bad act evidence must satisfy the trial court that the evidence has relevance apart from its tendency to prove character conformity.  
Feldman v. State
, 71 S.W.3d 738, 754  (Tex. Crim. App. 2002).  If the proponent succeeds in his task, then the trial court has discretion to admit the evidence.  
Id
.  

Huckaby complains that the State failed to recite a proper purpose for admission of the statement and contends that the trial court did not require one before overruling his objection.  The law does not require the State to specifically state why extraneous offenses are admissible under rule 404(b).  
Id.
  The State must only satisfy the trial court that the extraneous act has relevance apart from character conformity.  
Id
.  When the trial court overruled Huckaby’s objection, it implied that it was satisfied that the extraneous act had relevance apart from character conformity.  There is no indication in the record that the court needed any further argument concerning why the evidence was admissible.  If Huckaby had requested that the State be required to articulate why it believed the statement was admissible, the court could have required it; however, Huckaby did not make such a request.  
See Montgomery
, 810 S.W.2d at 387 (“The trial court should honor any request by the opponent of the evidence for articulation into the record of the purpose for which evidence is either offered by the proponent or ultimately admitted by the trial court.”).

The trial court did not abuse its discretion in determining that the statement, “If we were back in the ‘hood, I would have done capped your ass,” was relevant because it went to Huckaby’s possible motive for the offense. Evidence of motive is always admissible because “it is relevant as a circumstance tending to prove the commission of an offense.”  
Bush v. State
, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982);  
Bisby v. State
, 907 S.W.2d 949, 959  (Tex. App.—Fort Worth 1995, pet. ref’d).  For evidence to be admissible as proof of motive, it must tend to raise an inference that the accused had a motive to commit the alleged offense for which he is on trial. 
Bush
, 628 S.W.2d at 444.  Evidence of prior extraneous offenses committed by the accused against the victim, showing ill will or hostility toward the victim, is admissible as part of the State's case in chief as circumstantial evidence of the existence of a motive for committing the charged offense.  
Page v. State
, 819 S.W.2d 883, 887 (Tex. App.—Houston [14
th
 Dist.] 1991, pet. ref'd).

In 
Bisby v. State
, this court held that telephone threats made against a murder victim showed the defendant’s ill will or hostility toward the victim and were admissible as circumstantial evidence of motive.  
907 S.W.2d at 959; 
see also Foy v. State
, 593 S.W.2d 707, 709 (Tex. Crim. App.  [Panel Op.] 1980) (holding testimony regarding the prior bad acts of the defendant admissible because the evidence of ill will was “circumstantial evidence of the existence of a motive” for committing charged offense).  
Huckaby’s statement is a similar threat that showed his ill will or hostility toward Sergeant Parker.  This is further evidenced by the discussion that took place at Kimberly’s apartment after Huckaby made the statement.  Brown testified that “[a] discussion broke out about the way--what had just happened and the way Mr. Parker was treating Kimberly also and about the ongoing situation that was at hand.”  The discussion then turned to kidnapping and killing Sergeant Parker. 
 Thus, the trial court properly allowed the testimony concerning the extraneous bad act because it established a possible motive for the offense and not simply character conformity.  
See
 
Tex. R. Evid
. 404(b).

Huckaby asserts that the trial court then erred by overruling his
 rule 403 objection 
because the record does not show the trial court conducted the required balancing test before admitting the evidence.  
Although the trial court did not conduct a balancing or weighing on the record, because Huckaby's objection at trial was made under rule 403, we assume the trial court, by overruling Huckaby's objection, implicitly found that the evidence’s probative value was not substantially outweighed by any unfair prejudice. 
 See Jones
, 963 S.W.2d at 183. 

Huckaby next complains that even if the evidence was admissible under rule 404(b), the trial court should have excluded it under rule 403.  Rule 403 favors admissibility of relevant evidence, and there is a presumption that relevant evidence is more probative than prejudicial.  
Montgomery
, 810 S.W.2d at 389.  The trial court considers several factors in determining whether the prejudicial effect of evidence substantially outweighs its probative value. 
Wheeler v. State
, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).  These factors include: (1) the inherent probative value of the evidence; (2) the strength of the evidence to show the defendant in fact committed the extraneous conduct; (3) the potential of the extraneous conduct to impress the jury in some irrational but nevertheless indelible way; (4) the amount of trial time needed to develop the evidence such that the jury’s attention is diverted from the charged offense; and (5) how great the proponent’s need is for the evidence.  
Montgomery
, 810 S.W.2d at 390.

Here, the statement was highly probative to show a possible motive for the offense.  Bunnell, the witness testifying to the statement, was the only person who heard Huckaby make the statement.  Because Bunnell had no incentive to testify falsely and he corroborated Brown’s testimony concerning the altercation, the evidence tends to shows that Huckaby did in fact make the statement.  The time it took for the State to develop the evidence was minute compared to the length of the trial.  Furthermore, the statement was not of a nature to impress the jury in an irrational or indelible way, because the evidence reflected that when Huckaby made the statement he was annoyed at having to wait on Sergeant Parker.  The State’s need for the evidence was not great, but the statement was the only evidence of any motive for the offense.  Thus, we conclude that the trial court did not abuse its discretion by overruling Huckaby’s rule 403 objection concerning the extraneous offense evidence.  Huckaby’s fourth point is overruled.

E. 
Motion to Suppress

In his fifth point, Huckaby alleges that the trial court erred by denying his motion to suppress a search warrant because the affidavit supporting the warrant lacked probable cause.  The State responds that the affidavit was sufficient to establish probable cause.

We review a trial court’s ruling on a motion to suppress under a bifurcated standard of review by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court’s application of the law of search and seizure.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
State v. Duncan
, 72 S.W.3d 803, 805 (Tex. App.—Fort Worth 2002, pet. dism’d w.o.j.).  The trial court, in determining whether a probable cause affidavit sufficiently supports a search warrant, examines the totality of the circumstances and gives great deference to the magistrate’s decision to issue the warrant.  
Ramos v. State
, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1198 (1997).  In determining whether probable cause exists to issue a warrant, a magistrate may draw reasonable inferences from the affidavit and must interpret the affidavit in a common-sense and realistic manner.  
Id.
  The allegations in the affidavit are sufficient if they “justify a conclusion that the object of the search is probably on the premises.”  
Id
. at 363. 

When a magistrate issues a warrant, the magistrate is the equivalent of a fact finder who engages in reasonable inferences and gives a common-sense interpretation to the affidavit.  
Duncan
, 72 S.W.3d at 807.  Therefore, we, like the trial court, are to review the affidavit with deference toward any reasonable inferences the magistrate could have made from the facts and with deference toward the magistrate’s common sense and practical interpretation of the affidavit.  
Id
.  Only the facts found within the four corners of the affidavit may be considered.  
Davis v. State
, 27 S.W.3d 664, 667  (Tex. App.—Waco 2000, pet. ref’d).
 

Applying this standard—looking to the four corners of the affidavit, giving the magistrate’s decision to issue the warrant great deference by deferring to the reasonable inferences from the facts set forth in the affidavit and the common sense and practical interpretation of the affidavit—we hold that considering the totality of the circumstances, a probability existed that trace/biological evidence and binding material probably would be found in Huckaby’s car.  

The warrant affidavit states that affiant’s probable cause is based upon information received from Detective Barrett.  During his investigation, Detective Barrett learned that Huckaby had threatened Sergeant Parker while he was at work. 
 On August 3, 2000, Detective Barrett learned that a body, wrapped in a sheet and a piece of plastic bound with gray duct tape, had been found in the Sabine River near Gladewater. 
 He interviewed Huckaby, and Huckaby admitted to having the altercation with Sergeant Parker. 
 Detective Barrett later interviewed Brown, who admitted to being present when the group planned the kidnapping and killing of Sergeant Parker. 
 Brown said Sergeant Parker was assaulted, subdued, and forced into the trunk of Huckaby’s car. 
 The men then transported Sergeant Parker, who was still in the trunk, to Gladewater. 
 Brown also told Detective Barrett where they purchased the gray duct tape to bind the body. 
 Detective Barrett interviewed another man who also admitted to being present during the kidnapping and murder.

These facts, along with reasonable inferences, provided the magistrate with probable cause to believe that Sergeant Parker had been assaulted, subdued, bound with tape, forced into the trunk of Huckaby’s car, and driven to Smith County.  As the State correctly reasons, “by applying common sense, the magistrate could have concluded that the trace and biological evidence could easily have been overlooked in a clean-up of the car trunk, suggesting a valid conclusion that such evidence probably would still be there.”  Thus, we conclude that the magistrate had probable cause based on the affidavit to issue a search warrant for Huckaby’s car; therefore, the trial court did not err in overruling his motion to suppress.  Huckaby’s fifth point is overruled. 

F. 
Adequate Notice in Indictment

In his sixth point, Huckaby contends that the trial court erred by refusing to make the State provide adequate notice in the indictment so that Huckaby would know how to prepare his defense and by allowing the jury to return a verdict using an unproven allegation.  The State responds that it is allowed to plead alternate methods of committing an offense, and it must prove guilt under only one of the theories.

The purpose of an indictment is “to give the defendant notice of the particular offense with which he is charged, and to enable the court, on conviction, to pronounce the proper judgment.”  
Lehman v. State
, 792 S.W.2d 82, 84-85 (Tex. Crim. App. 1990); 
see also
 
Tex. Code Crim. Proc. Ann
. art. 21.11 (Vernon 1989).  Alternate manner and means of committing a single offense may be charged in the same indictment. 
 Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), 
cert. denied,
 504 U.S. 958 (1992); 
see also Lawton v. State
, 913 S.W.2d 542, 551 (Tex. Crim. App. 1995), 
cert. denied
, 519 U.S. 826 (1996) (“The State is allowed to plead all alternative theories of the offense which the evidence may ultimately prove.”) When the State pleads alternate theories of the same offense, it is not required to prove guilt under all of the alleged theories; proof of guilt under one theory of the offense will suffice for conviction.  
Lawton
, 913 S.W.2d at 551.

Here, the indictment provided Huckaby with notice that he must prepare to defend himself against the aggravated kidnapping charge.  Although he argues that the indictment contained a theory that could not be supported by the evidence, kidnapping with intent to terrorize Sergeant Parker, this does not mean that he did not receive fair notice of how to defend his case.  
See id.
 (holding that the trial court did not err in failing to quash an indictment because it allegedly contained erroneous alternative theories of the offense when the evidence supported the defendant’s conviction under another theory).  Because Huckaby had notice of the theories under which he was actually convicted, the indictment fulfilled its function of providing him with notice of the charges against him.  

Huckaby also argues that the jury charge improperly included the theory of intent to terrorize when the State provided no evidence to support it.  Where alternative theories of committing the same offense are submitted to the jury disjunctively, it is proper for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.  
See Kitchens
, 823 S.W.2d at 258.  There is no requirement that the jury designate which of the alternative means of committing the offense they found to have been proven.  
See id
.

Here, the jury did return a general verdict of guilty.  Huckaby challenges the sufficiency of the evidence to support only one of the State’s theories and not the remaining three theories.  The State must only prove one of the underlying offenses charged in the indictment in order to support the conviction for aggravated kidnapping.  Because Huckaby does not contest the sufficiency of the evidence to prove the other three theories in the indictment and the charge, the evidence is sufficient to support his conviction.  
See
 
Kitchens
, 823 S.W.2d at 259 (holding that because appellant did not contest the sufficiency of the evidence to prove a murder in the course of robbery, the underlying offense supported the conviction for capital murder).  We overrule Huckaby’s sixth point.

G.  
Exculpatory Evidence

In his seventh point, Huckaby contends that the trial court abused its discretion by refusing to conduct an in camera examination of the State’s file for exculpatory evidence.  The State responds that the trial court did not abuse its discretion in denying the request because he failed to show that any material and favorable evidence existed in its file.

It is settled law that a defendant's due process rights are violated if he does not obtain, upon request, evidence in the State's possession favorable to him “where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”
 
 
Brady v. Maryland
, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).  But there is no general right to discovery in a criminal case, and 
Brady
 does not create one. 
See
 
Weatherford v. Bursey
, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977).
 To invoke
 Brady
, the accused must present evidence that:  (1) the prosecution suppressed or withheld evidence;  (2) this evidence would have been favorable to the accused; and (3) this evidence would have been material to the accused's defense.  
Ex parte Kimes
, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993). 

Brady
 material applies to information that is known to the prosecution but unknown to the defense.  
United States v. Agurs
, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976); 
Jackson v. State
, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976) (holding that the prosecutor did not violate his duty to disclose favorable information when the evidence was already available to the defense), 
cert. denied
, 434 U.S. 1047 (1978).
  
Brady
 does not require the State to produce exculpatory information that it does not have in its possession or that is not known to exist.  
Hafdahl v. State
, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990), 
cert. denied
, 500 U.S. 948 (1991); 
Johnson v. State
, 901 S.W.2d 525, 533 (Tex. App.—El Paso 1995, pet. ref’d).  The State does not have a duty to seek out evidence for the defendant’s use.  
Palmer v. State
, 902 S.W.2d 561, 563 (Tex. App.—Houston [1
st
 Dist.] 1995, no pet.).

Huckaby’s argument is factually similar to the defendant’s argument in 
Ransonette v. State
, which the court of criminal appeals rejected.  550 S.W.2d 36, 39 (Tex. Crim. App. 1976).  The defendant in 
Ransonette
 also argued that the trial court erred by denying his request to have the court make an in camera inspection of the prosecutor’s file to determine if it contained evidence favorable to the defendant.  
Id
.  The court of criminal appeals held that his motion, in effect, admitted that he knew of no material evidence favorable to his defense.  
Id
.  Rather, he merely wished to rummage through the State's file to see if there was anything that may have had any relevance to his guilt or innocence.  
Id
.  The court noted that such a request was too broad to be effective.  
Id
.  It further held that “we know of no constitutional obligation of the trial court to peruse the prosecutor's file for exculpatory evidence in the absence of a specific request supported by some showing that such evidence exists.”  
Id
. at 40.

Here, Huckaby admits in his brief that he did not have any belief at trial and does not now have any belief that the State withheld exculpatory or favorable evidence.  Thus, he cannot establish the first prong required under 
Brady
, that the State suppressed or withheld evidence.  Furthermore, the court has no constitutional obligation to peruse the file for such evidence in the absence of a specific request supported by some showing that the evidence exists.  
Id
. (holding that there is no significant difference between cases where there has been merely a general request for exculpatory evidence and cases in which there has been no request at all).  Thus, Huckaby’s seventh point is overruled.

IV. CONCLUSION

Having overruled all of Huckaby’s points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and GARDNER, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: May 29, 2003

FOOTNOTES
1:
The jury also heard testimony that Huckaby played a role in the marital problems between the couple and that he felt like Sergeant Parker treated his wife badly.

2:
Huckaby also contends that the trial court failed to perform a requested rule 403 balancing analysis of the evidence.  Although the trial court did not conduct a balancing or weighing on the record, because Huckaby's objection at trial was made under rule 403, we assume the trial court, by overruling Huckaby's objection, implicitly found that the probative value was not substantially outweighed by any unfair prejudice. 
 See
 
Jones v. State
, 963 S.W.2d 177, 183 (Tex. App.—Fort Worth 1998, pet. ref’d). 

3:
Huckaby limits his complaint to the Sixth Amendment right to counsel; he does not raise any Fifth Amendment concerns.

4:
Huckaby also argues that rule 606(b) is unconstitutional because it interferes with his right to determine juror misconduct.  However, courts have upheld the constitutionality of rule 606(b) and have determined that it does not deny a defendant the right to a fair trial.  
See Richardson
, 83 S.W.3d at 362; 
Hines
, 3 S.W.3d at 622 (holding that a rule approved by the supreme court and court of criminal appeals is constitutional until one of them holds otherwise).