**Walter Francis KALISZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–99–00092–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 2, 2000.

---

Terrence A. Gaiser, Houston, for appellants.

S. Elaine Roch, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and BAIRD.*

## MAJORITY OPINION

WANDER McKEE FOWLER, Justice.

Over his plea of not guilty, appellant was convicted of driving while intoxicated. *See* Tex.Pen.Code Ann. § 49.04 (Vernon Supp. 2000). After considering evidence which included a videotape of a police officer reading appellant his *Miranda* rights, the jury assessed punishment at thirty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction on one point of error. We reverse and remand.

## BACKGROUND

At or around 9:20 p.m. on May 25, 1998, Memorial Day, Pasadena Police Officer R.J. Anderson was directing traffic around a multi-car accident. He and other officers had set out a pattern of flares to direct traffic off the road and through a parking lot. Suddenly, Officer Anderson saw a car swerve into oncoming traffic, through the flares, and almost hit his patrol car. After the car stopped, appellant exited the vehicle and began to shout expletives at everyone at the accident scene.

Officer Anderson approached appellant and started a conversation with him. He noticed appellant was walking unsteadily, had slurred speech, and had a strong smell of alcohol on his breath and person. Officer Anderson asked appellant whether he had been drinking, to which appellant responded, "Don't worry about it." Thereafter, Officer Anderson concluded that appellant was intoxicated and asked appellant to perform some field sobriety tests. When appellant refused to cooperate, Officer Anderson arrested him for driving while intoxicated and transported him to the city jail. At the jail, appellant further refused to take a "breathalyser" test. With the assistance of another officer, Officer Anderson then videotaped appellant as he asked appellant to perform certain motor skills exercises and gave him verbal *Miranda* warnings.

Before and during trial, appellant disputed the admissibility of the videotape. Prior to trial, appellant moved to suppress portions of the videotape on the grounds that he had invoked his right to remain silent and terminate the interview at the very beginning of the tape by attempting to leave the video room. Appellant also moved to suppress those portions of the videotape in which he invoked his right to counsel. The trial court granted the motion only in part. It ruled that every question and answer regarding appellant's *Miranda* rights, including the officer's inquiry into whether appellant understood he had a right to have counsel of his choice, was admissible. Only the audio portion of the tape where appellant invoked his right to counsel was held inadmissible.

The State offered testimony from Officer Anderson and another officer, each of whom opined that, given his state on the night in question, appellant had lost the normal use of his mental and physical faculties because he had consumed alcohol. When the State attempted to introduce the videotape into evidence at trial, appellant renewed the same objections raised in his motion to suppress. The trial court overruled appellant's objections, but instructed the jury that a portion of the audio accompanying the videotape was not admissible for its consideration. The trial court explained that the bailiff would press the "mute" button for seventeen seconds dur-

---

* Former Judge Charles F. Baird sitting by assignment.

ing the inadmissible portion of the tape, and that the jury was not to speculate about what was being said.

Appellant testified in his defense. He denied consuming any alcohol, but admitted taking two valium that afternoon and three seconal that night with little sleep. He also presented the testimony of two friends and his ex-wife, each of whom had seen him that evening—his ex-wife only 30 minutes before his arrest. In contrast to the testimony by the officers, these witnesses testified that appellant did not have any alcoholic beverage and did not smell of alcohol, although his ex-wife did report that appellant took a prescription pill and needed to get home before it took effect. The jury ultimately found him guilty. In rendering its guilty verdict and assessing appellant's punishment, the jury also had before it appellant's four previous convictions for driving while intoxicated.

## DISCUSSION

In his sole point of error, appellant contends that the trial court erred in allowing the jury to view and listen to the videotape because it showed appellant receiving his *Miranda* warnings and invoking his right to remain silent, to counsel, and to terminate the interview. In particular, appellant argues that *any* seventeen second redaction of the tape is insufficient to remove the jury's perception that appellant was invoking his right to counsel.

An individual may not be penalized for exercising his Fifth Amendment rights when he is under police investigation; evidence of his invocation of his right to counsel is inadmissible as evidence of guilt. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App.1991) (citing *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966)); *Mathieu v. State*, 992 S.W.2d 725, 729 (Tex.App.—Houston [1st Dist.] 1999, no pet.). However, police requests to perform sobriety tests, directions on how to perform the tests, and queries concerning a suspect's understanding of his rights do not constitute interrogation. *See Mathieu*, 992 S.W.2d at 729. "A D.W.I. videotape should not be suppressed unless the police seek to elicit a testimonial response not normally incident to arrest and custody, or the police conduct is reasonably likely to elicit a response." *Id.* The audio portion of a videotape is admissible only when it does not include compelled testimony resulting from interrogation. *See Miffleton v. State*, 777 S.W.2d 76, 81 (Tex.Crim.App. 1989). We review the trial court's decision whether to admit evidence for an abuse of discretion. *See Burke v. State*, 930 S.W.2d 230, 235 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd).

Here, the trial court explained to the jury that seventeen seconds of the inadmissible portion of the tape would be muted. However, we do not know the exact point at which the trial court muted the tape. The videotape reflects the following events:

(1) The tape begins at 10:29:30 p.m., with Officer Anderson asking appellant to put his feet together and keep his hands by his side.

(2) At 10:30:07 p.m., without saying a word to Officer Anderson, appellant begins to stagger out of the room when he is pulled back by Officer Anderson. Appellant does not resist or otherwise object.

(3) At 10:30:22 p.m., the officer begins reading appellant his *Miranda* warnings, asking appellant after each right if he understands it, to which appellant—after long pauses during which he sways—responds, "Yes."

(4) At 10:31:52 p.m., the officer first asks appellant if he understands his right to have an attorney appointed to advise him before and after questioning.

(5) At 10:31:55 p.m., again without saying a word, appellant begins to exit the room a second time, and again is brought back.

(6) At 10:32:08 p.m., appellant attempts to exit the room a third time and is returned.

(7) At 10:32:38 p.m., appellant finally mumbles, "I've got a lawyer" or "I have a lawyer." [1]

(8) At 10:32:59 p.m., appellant again shuffles toward the door. Officer Anderson asks, "Are you terminating the interview? [No response.] Are you terminating the interview? [No response.] Very good then." Officer Anderson then terminates the interview and the videotape stops.

The right to terminate questioning is among the procedural safeguards established by *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *Watson v. State,* 762 S.W.2d 591, 596 (Tex.Crim.App.1988). If an individual indicates in any manner at any time before or during questioning that he wishes to remain silent, the interrogation must cease. *See Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627. Anything said or done by the appellant that could reasonably be interpreted as a desire to invoke that right is sufficient to halt questioning. *See id.*

Appellant argues that he attempted to terminate his interview when he first tried to leave the room. Based on appellant's conduct throughout the interview, we disagree. As Officer Anderson asked appellant if he understood each right, appellant would not respond for several seconds, would appear confused, and would sway slightly while standing in place. Ultimately he answered each question. In addition, each time appellant was brought back into the room, he did not object and continued to answer questions. It appears that appellant did not really know what was going on and, because appellant spoke only in response to direct questions and

did not object to being returned to the center of the room, it is difficult to tell what, if anything, he was thinking when he tried to wander off. As a consequence, we do not find that appellant's actions could be reasonably interpreted as a desire to terminate the interview and, thus, the trial court did not abuse its discretion in admitting this portion of the videotape.

In addition, all the *Miranda* questions and appellant's answers (as to whether he understood his rights), were admissible—except for the question regarding appellant's right to counsel. As we stated, the following do not constitute interrogation: requests to perform sobriety tests and queries to determine whether a suspect understands his rights. *See Mathieu,* 992 S.W.2d at 729. Anderson's initial questions to appellant allowed the jury to observe appellant's demeanor and speech without delving into appellant's substantive rights. Thus, the portions of the videotape including Anderson's reading of the *Miranda* warnings and questions whether appellant understood each right—except the right to counsel—was admissible before the jury.

However, as we have noted above, we agree with appellant that the trial court erred in introducing that portion of the tape that contains the questions regarding his right to counsel and everything thereafter. Taken as a whole, Officer Anderson's questions regarding this right, and Officer Anderson's comments to appellant as he was leaving the room, make it appear that appellant was invoking his right to counsel and to terminate the interview. Significantly, at trial, the jury heard Officer Anderson inform appellant of his right to counsel. The tape was then muted and shortly thereafter, appellant once again began to slowly shuffle away. But, as appellant was shuffling toward the door,

---

1. Based on the judge's comments, we believe that the tape was muted here, just before appellant mumbled, "I have a lawyer". We know the judge muted only 17 seconds, so the audio must have been turned back on just before appellant started to walk off a final time (number (8) above), and the jury would have heard the officer's comments about terminating the interview.

the audio was turned on again and the jury could hear Officer Anderson ask twice "Are you terminating the interview?" When appellant offered no response, Officer Anderson remarked, "Very good then," and terminated the interview. Even if appellant was not terminating the interview, which is difficult to tell, the officer's comments made it appear that appellant did want to stop the interview to talk with his lawyer. The jury should not have seen or heard this last exchange because, viewing the tape in its entirety, it creates an impression that appellant had, indeed, invoked his right to counsel and to terminate the interview. *See Mathieu*, 992 S.W.2d at 730 (holding that a sufficient period of time between the reading of appellant's *Miranda* rights and a videotape's sound deletion must exist to preclude the jury from concluding that appellant invoked his right to counsel); *see also Dumas v. State*, 812 S.W.2d 611, 614 (Tex.App.—Dallas 1991, pet. ref'd) (holding that the State's action in deleting the videotape's volume, after the interrogating officer gave *Miranda* warnings and asked whether the defendant wished to invoke those rights, led the jury to the inescapable conclusion that the defendant had exercised his constitutional privilege to remain silent). Because evidence of an accused invoking his constitutional right to counsel may be construed adversely to a defendant and may improperly be considered as an inference of guilt, the trial court erred in admitting Officer Anderson's query concerning the right to counsel and everything that followed. *See Hardie*, 807 S.W.2d at 322; *Dumas*, 812 S.W.2d at 614 (citations omitted).

## HARM ANALYSIS

 Having concluded that the trial court erred in admitting the portions of the videotape regarding appellant's right to counsel, we must determine if the error has harmful. This error, which involves the right to be free from self-incrimination, is constitutional error. *See Hardie*, 807 S.W.2d at 322; *see also Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326,

2333, 147 L.Ed.2d 405 (2000). Accordingly, our analysis is governed by Rule 44.2(a) of the Texas Rules of Appellate Procedure, which provides as follows:

> If the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

Tex.R.App.P. 44.2(a) (Vernon Supp.2000). Texas courts have applied the harmless error rule to *Miranda* violations of the type alleged by appellant. *See, e.g., Mayes v. State*, 8 S.W.3d 354, 361–62 (Tex. App.—Amarillo 1999, no pet.); *Gray v. State*, 986 S.W.2d 814, 815–16 (Tex.App.—Beaumont 1999, no pet.). In applying that rule, we are guided by the following factors: (1) the source of the error; (2) the nature of the error; (3) the extent the error was emphasized by the State; (4) its probable collateral implications; (5) the probable weight a juror would place upon the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Gray*, 986 S.W.2d at 815 (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989)). In analyzing these factors, we may not focus on the propriety of the outcome of the trial. *See Harris*, 790 S.W.2d at 587. As the Texas Court of Criminal Appeals has explained,

> [T]he reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of

a magnitude that it disrupted the juror[s'] orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

*See Harris,* 790 S.W.2d at 587–88. In conducting this analysis, a reviewing court must first isolate the error and all its effects and then ask whether a rational trier of fact might have reached a different result if the error had not occurred and its effects had not resulted. *See id.* at 588.

■ In this case, the error stems from the videotape which reflects Officer Anderson reciting appellant's right to counsel under *Miranda,* followed by seventeen seconds of muted audio and the decision shortly thereafter to terminate the interview. The State, as the videotape's proponent, is the source of the error. As noted above, the nature of the error is one of constitutional proportion in that it creates an inescapable conclusion that appellant has invoked his right to counsel and to terminate the interview. *See Dumas,* 812 S.W.2d at 614. Although the State did not emphasize the error in any way, and the trial court did offer an instruction on the excluded audio portion of the tape, the probable collateral implication is that the jury may have adversely or improperly considered evidence of an accused invoking a constitutional right or privilege as an inference of guilt. *See Hardie,* 807 S.W.2d at 322; *Dumas,* 812 S.W.2d at 614. Because the evidence of whether appellant imbibed any alcoholic beverage was conflicting, it is difficult to gauge how much weight a juror would probably place on the error even in light of the trial court's instruction. We note that, while the presentation of the evidence took only three hours, it took the jury six hours to decide appellant's guilt. During its deliberation, the jury specifically asked to review the videotape a second time.

The State claims there is "overwhelming" evidence of appellant's guilt and, therefore, the error, if any, was harmless. We agree that, in this case, there was compelling evidence to show that appellant lacked the normal use of his mental and physical faculties on the night in question. However, there was conflicting evidence presented regarding whether appellant had, in fact, consumed alcohol on that night. In light of the foregoing factors, and the conflicting nature of the evidence, we are unable to conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* TEX. R.APP.P. 44.2(a). Accordingly, appellant's sole point of error is sustained on that basis and the judgment of the trial court is reversed and remanded for additional proceedings.

EDELMAN, Justice, dissenting.

Appellant was charged and tried for driving while being intoxicated by alcohol only, *i.e.,* not drugs (even though the latter would have also been an offense [1]). As the majority opinion reflects, the evidence left no doubt that appellant was intoxicated, but only whether he had consumed alcohol to reach that condition. The majority opinion concludes that the trial court erred in admitting portions of the videotape showing: (i) an officer's questions and appellant's answers about his right to counsel; (ii) appellant's subsequent attempt to leave the room; and (iii) the officer's comments about appellant thereby terminating the interview. The majority holds that admitting this evidence was error because it can be interpreted as an attempt by appellant to invoke his right to remain silent and/or have an attorney to advise him.

The majority opinion further concludes that appellant was harmed by the admission of these portions of the videotape

---

1. *See* TEX. PEN. CODE ANN. § 49.01(2)(A) (Vernon Supp. 2000) (defining "intoxicated" to include loss of faculties from introduction of controlled substance or drug as well as alcohol).

because the jury could consider such evidence of a defendant invoking his constitutional rights as an implied admission of his guilt. However, as the majority opinion reflects, harm is shown by whether the error might have prejudiced the jurors' decision making, their application of the law to the facts, and their orderly evaluation of the evidence. Ultimately, it is a question of whether a rational trier of fact might have reached a different result without the error.

In this case, nothing in the inadmissible portions of the videotape was probative of the only real issue in this case: whether appellant became intoxicated from alcohol or something else. Thus, whatever the jury relied upon in resolving the conflicting evidence presented by the officers and appellant's witnesses on that question, there is no indication that it could have been the videotape. Therefore, there is no reason to believe that the inadmissible portions of the videotape prejudiced the jurors' decision making or that a rational trier of fact might have reached a different result without them. Accordingly, I would conclude that the error was harmless and affirm the conviction.