Affirmed and Memorandum Opinion filed March 1, 2007








Affirmed and Memorandum Opinion filed March 1, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00635-CR

____________

 

ROGER DALE STEPP, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 970,526

 



 

M E M O R A N D U M   O P I N I O N








A jury convicted appellant Roger Dale Stepp of the
aggravated sexual assault of his adopted daughter, C.D.S., and the trial court
assessed punishment at twenty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In
this appeal, appellant challenges the factual sufficiency of the evidence
supporting his conviction, the admission of certain adverse testimony, and the
effectiveness of his trial counsel.  We hold the evidence is factually
sufficient to support the conviction and any error by the trial court in
admitting improper outcry testimony was not presented for review.  We further
hold appellant failed to show that his trial counsel was ineffective. 
Therefore, we affirm the judgment of the trial court. 

I.  Factual and
Procedural Background

          Complainant
C.D.S. was born on March 13, 1990, and had a prior history of sexual abuse by
the time she was adopted by appellant Roger Stepp and his wife, Patti Stepp, at
the age of two and a half.   The Stepps adopted another daughter, S.S., a few
years later, and they also have a son, C.S.  Throughout the time C.D.S. lived
with the Stepps, she displayed behavioral problems. 

C.D.S. testified
that when she was eight or nine years old, appellant made her take off her
clothes and sit on top of him while he was nude in the bathroom of the family=s home.  According
to C.D.S., their sexual organs were in contact as appellant rocked her back and
forth until he stopped and wiped her off with toilet paper.  She also testified
that appellant repeated this activity while she was trying to sleep later that
day, and on one occasion, he had a gun with him and told her he would kill her
if she told anyone.  According to C.D.S., appellant sexually abused her once or
twice a week, usually in the family=s home, until July
2003.  Patti Stepp testified that C.D.S. told her that appellant was sexually
abusing her at this time, but Patti=s only action in
response was to tell her sisters about the matter.  

On July 9, 2003,
Patti=s sister Vicki
Cameron and two of Cameron=s children spent the night at the Stepps= home because Cameron was taking
S.S. to a gymnastics camp in Oklahoma early the next morning.  Cameron slept in
S.S.=s room, which shared a
bathroom with C.D.S.=s
room.  The bathroom had two doors, one connecting it to C.D.S.=s bedroom and another connecting it to S.S.=s bedroom.  Each bedroom also had a door that opened onto
the same hallway.  








C.D.S.
testified that she was asleep in her own room that night when she was awakened
by appellant.  According to C.D.S., appellant locked her bedroom door and the
door between the bathroom and S.S.=s room
and told her to Aget
ready,@ a phrase he used before incidents of sexual abuse.  She testified
that appellant then penetrated her sexual organ with his for three to four
minutes before he stopped and wiped both of them with tissue paper.  She stated
that as she and appellant were dressing, Cameron called C.D.S.=s name from outside the door that separated C.D.S.=s room from the hallway.  C.D.S. testified that appellant
then signaled to her to open the door connecting S.S.=s room to the bathroom, and she did so. According to
C.D.S., Cameron then entered the bathroom from S.S.=s room and C.D.S. went to bed.         

Cameron
testified that she awoke in the very early hours of July 10, 2003 to use the bathroom
but found the bathroom door locked.  She testified that she knocked and called
for C.D.S. to unlock the door, and although she received no response, she heard
someone moving around.  She then went into the hallway and knocked on C.D.S.=s bedroom door.  She attempted to open that door, but it
was locked and someone on the other side held the handle so it would not move. 
When Cameron went back to the bathroom door, C.D.S. had unlocked it and Cameron
briefly spoke to her without entering her bedroom.  However, Cameron testified
that when she was using the bathroom, she heard C.D.S.=s bedroom door open and close.  Hearing this upset Cameron,
and she had difficulty falling asleep immediately afterwards.  She testified
that while lying in bed awake, she heard appellant go to C.D.S.=s room and tell her that he needed to speak to her
briefly.  Shortly afterwards, appellant walked into the room where Cameron was
in bed and told her that C.D.S. could go with her on the trip to Oklahoma the
following morning.  Later that day, Cameron told two of her sisters that she
suspected appellant was sexually abusing C.D.S.  These sisters contacted the
authorities, but did not discuss their suspicions with Patti Stepp.








Appellant
testified that he visited C.D.S.=s room
twice that night: first to discuss the possibility of allowing her to join her
aunt and sister on the planned trip the following day, and again to inform her
that she had permission to go.  Appellant further testified that during the
time between these visits, he watched television briefly, folded a load of
laundry, and discussed with his wife whether to allow C.D.S. to go on the
trip.  He denied locking any doors upon entering C.D.S.=s room and stated that C.D.S. habitually forgot to unlock
the door connecting S.S.=s room
to the bathroom.  He admitted that he prevented Cameron from entering C.D.S.=s room by holding the handle of the bedroom door and stated
that he did so because he did not want to see Cameron in her nightclothes.  According
to appellant, he informed Cameron after the second visit that C.D.S. would be
allowed to join her on the trip. 

S.S.
testified that she slept in C.D.S.=s room
on the night of July 9, 2003, and that appellant only entered the room to tell
C.D.S. she could go on the trip planned for the next day.  However, Cameron=s
daughter, S.C., testified that she saw S.S. wearing her pajamas and lying on a
sofa in the bedroom that appellant and Patti Stepp shared on the first floor of
the family=s home.  C.D.S. also testified that S.S. slept
downstairs that night. 

C.D.S. went to the
gymnastics camp in Oklahoma with her sister and aunt, but did not discuss the
events of the previous night.  On her return to Texas, she met with caseworkers
from Child Protective Services and told them about appellant=s
sexual abuse. 

Caseworker
Andrea Chatman[1] was initially
assigned to the case.  She interviewed C.D.S. on July 22, 2003 and determined
that the child had been sexually abused.  Forensic interviewer Ivy Biggs Syon[2]
then conducted a detailed recorded interview.  On the same day, 

Dr.
Margaret McNeese examined C.D.S. and determined that there was a transection,
or healed laceration, through her hymen.  According to Dr. McNeese, the
transection occurred more than one or two weeks before the examination and was
caused by penetration and stretching rather than tampon use or masturbation. 
She also testified that such transections cannot be caused by sports such as
horseback riding or gymnastics.  Finally, Dr. McNeese testified that
transections and clefts are completely different.








After
the interviews and examinations on July 22, 2003, C.D.S. was placed in an
emergency temporary shelter and never resided with the Stepps again.  Detective
Leslie McFarland, who assisted in the investigation, testified that no attempt
to collect DNA evidence was made because the complainant and the suspect lived
in the same home and more than seventy-two hours had elapsed from the time of
the alleged incident.  Detective McFarland interviewed the Stepps, viewed
C.D.S.=s interview, and eventually presented the case to the Child
Abuse Unit of the Harris County District Attorney=s
office.  

Appellant
was indicted for aggravated sexual assault of a child in February 2004.  A year
later, the first trial of this case ended in a mistrial when the jury was
unable to reach a verdict.  In April 2005, the case was retried.

During
the second trial, appellant offered the testimony of Dr. Robert Franklin, who
reviewed the results of Dr. McNeese=s
examination.  Dr. Franklin described a cleft on C.D.S.=s hymen.  He testified that a cleft and a healed
transection may be the same thing, and a cleft can be a normally occurring
variation.  He could not provide an opinion as to whether penetration had
occurred, but stated that tampons and certain sports can damage the hymen.  He
further testified that C.D.S.=s
condition was Aconsistent with maybe
manipulating herself.@ 
Finally, he testified that C.D.S.=s
annular ring, which surrounds the hymen, appeared to be small.  According to
Dr. Franklin, this finding is inconsistent with penetration.

Patti
Stepp testified that C.D.S. occasionally had fallen during gymnastics training
and landed straddling the balance beam.  She also testified that C.D.S. had
engaged in excessive masturbation since she was first adopted by the Stepps. 
Finally, Patti testified that a few days after C.D.S. had her first period in
June 2003, she discovered that some of her large tampons had been used.

The
jury found appellant guilty as charged in the indictment.  The trial court
denied appellant=s
motion for new trial, and assessed punishment at twenty years= confinement in the Institutional Division of the Texas
Department of Criminal Justice.  This appeal ensued.








II.  Issues Presented

Appellant
presents six issues for our review.  First, he contends the evidence is
factually insufficient to prove he committed aggravated sexual assault of a
child.  Second, he argues the trial court erred by allowing the prosecutor to
use his invocation of his Fifth Amendment right to counsel against him.  Third,
appellant asserts the trial court erred in allowing Andrea Chatman to testify
as an outcry witness pursuant to article 38.072 of the Texas Code of Criminal
Procedure.  In his fourth and fifth issues, appellant contends that his trial
counsel was ineffective for failing to (a) object to C.D.S.=s testimony that appellant threatened her with a gun during
one instance of sexual abuse, and (b) properly object to the introduction
of extraneous offenses beyond the scope of a pre-trial order.  Finally,
appellant argues that he was denied effective assistance of counsel based on
the totality of his defense counsel=s
errors.

III.  Analysis

A.      Factual Sufficiency of the Evidence








In his
first issue, appellant challenges the factual sufficiency of the evidence to
prove he sexually assaulted C.D.S.  When reviewing the factual sufficiency of
the evidence, we view all the evidence in a neutral light and set aside the
verdict Aonly if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.@ Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we
may reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s
verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
When reviewing the evidence, we must avoid intruding on the factfinder=s role as the sole judge of the weight and credibility of
witness testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App.
2000) (en banc).  We do not reevaluate the credibility of witnesses or the
weight of the evidence, and will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).  Finally, we must discuss the most important and relevant evidence that
supports the appellant=s
argument on appeal.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.
2003). 

Appellant
contends that the jury=s
verdict Arests upon the continually changing story of a troubled
teen and experts who specialize in >making= child abuse cases.@  In
support of these contentions, appellant cites evidence that C.D.S. was sexually
abused before her adoption and has displayed a number of problematic behaviors
since that time.  Appellant also points out that C.D.S. never mentioned a gun
until the second trial, and quotes a therapist who testified that, AIn general, if people aren=t
telling the truth, the story tends to change.@
However, we are not free to reevaluate the credibility of the witnesses.  See
Johnson, 967 S.W.2d at 412.  Appellant had the opportunity to impeach the
adverse witnesses at trial, and the jury made its own credibility
determinations.  See id.  We have no basis on which to disregard that
determination on appeal.

Appellant
next contends that the abuse could not have occurred as alleged because his
work schedule left him with no opportunity to abuse C.D.S. as frequently as she
claimed.  He further argues that other members of the household were always
present and would have heard any abuse if it occurred as C.D.S. described. 
Again, this is a question of credibility that lies within the jury=s province, and we cannot accept appellant=s arguments without impermissibly substituting our judgment
for that of the jury.  See id.

Although
the evidence is conflicting, the testimony of C.D.S., Cameron, Dr. McNeese, and
Chatman support the verdict.  On this record, we cannot say that the great
weight and preponderance of the evidence contradicts the jury=s verdict.  We therefore overrule appellant=s first issue.

B.      References to Appellant=s Request for Counsel

 








In his
second issue, appellant argues that the trial court erred by allowing the
prosecutor to use his invocation of his Fifth Amendment right to counsel
against him.  This argument concerns a line of questioning that began during
defense counsel=s
cross-examination of Detective McFarland about her interview of appellant: 

Defense Counsel:   Did
you bother to get a written statement from him?

McFarland:            He
said he wanted to see an attorney.

Defense Counsel:   Are
you sure that he said he wanted to see an attorney that night?

McFarland:            He
said before we did anything further, he would prefer to talk to an attorney.

Defense Counsel:   I
want to ask you to look at your report , if you would, please, ma=am.  And if there is
anything in there that points out that he requested to speak with an attorney,
I would like for you to find that.  

Your Honor, if it takes
too much time, I=ll withdraw that question.  I don=t think that the jury=s . . .

McFarland:            I
found it.

Defense Counsel:   That=s okay.  I=ll withdraw the
question. 

 

On
redirect examination, the following exchange occurred between the State and
Detective McFarland:

State:                    Detective,
I=m going to show you what I=ve marked just for
identification purposes as State=s Exhibit 14, which is
your offense report.  Defense counsel asked you about the defendant wanting to
speak to a lawyer before he made a statement and where it is in the report.

Defense Counsel:   Objection. 
I withdrew that question.

The Court:             Overruled.

State:                    Did
you find it in your report?  I will show you your offense report, which is
State=s Exhibit 14.  Do you see there in your report that you noted that
the defendant wanted to talk to an attorney before he gave any other
cooperation or statement?

McFarland:            Yes,
sir.

State:                    Pass
the witness, Judge. 

 








We are
unable to identify the alleged error concerning this testimony.  Although his
stated issue complains of trial court error, the testimony regarding appellant=s stated intent to consult an attorney was volunteered by a
witness and initially pursued by the defense attorney.  The prosecution then
repeated a question previously asked and withdrawn by the defense.  No
substantive objections were made to any of the testimony, nor does appellant
cite any indication in the record that the testimony was the subject of a
motion to exclude.  Appellant does not contend that the trial court was
required, sua sponte, to instruct the witness not to answer such
questions or to instruct the jury to disregard her answers; thus, appellant has
identified no actions by the trial court that arguably are erroneous.   

In
support of this issue, appellant relies on Kalisz v. State, 32 S.W.3d
718 (Tex.App.CHouston [14th Dist.] 2000,
pet. ref=d), in which we stated, AAn
individual may not be penalized for exercising his Fifth Amendment rights when
he is under police investigation; evidence of his invocation of his right to
counsel is inadmissible as evidence of guilt.@  Id.
at 721.  Despite its broad language, Kalisz does not purport to extend
federal constitutional rights, nor does it stand for the proposition that the
constitutional right to counsel attaches when one becomes the subject of a
police investigation.  Rather, this language must be understood in context.  In
Kalisz, the appellant was arrested for driving while intoxicated and
transported to the city jail.  Id. at 720.  At the jail, officers made a
videotape in which the appellant was given his Miranda warnings.  Id. 
Based on the conduct of the appellant and the comments of the officers after
this point, the videotape gave viewers the impression that the appellant had
invoked his right to counsel.  Id. at 723.  Not only did the appellant
dispute the admissibility of the videotape both before and during trial, the
evidence it recorded was collected during custodial interrogation, after his
Fifth Amendment rights had attached.  Id. at 720B21.  








In
deciding Kalisz, we followed Hardie v. State, in which the Court
of Criminal Appeals held that a defendant=s
invocation of the federal right to counsel during custodial interrogation is
inadmissible as evidence of guilt.  807 S.W.2d 319, 322 (Tex. Crim. App.
1991).  Here, however, appellant does not contend that his reference to an
attorney was made during a custodial interrogation;[3]
thus, the application of Kalisz is unclear.  Moreover, appellant cites
no authority for the proposition that we may reverse a conviction in the
absence of an identified error.

After
reviewing the record and construing appellant=s
brief liberally, we are unable to identify an act or omission by the trial
court that corresponds to appellant=s
argument.  We therefore hold appellant=s
second issue is waived.  See Tex.
R. App. P. 38.1(h).

C.      Admission of AOutcry@
Statement

In his
third issue, appellant contends the trial court erred in admitting the hearsay
testimony of Andrea Chatman under Article 38.072 of the Texas Code of Criminal
Procedure.  This provision creates an Aoutcry
exception@ to the hearsay rule in
prosecutions of sexual offenses committed against a child twelve years of age
or younger.  Article 38.072 provides that outcry testimony from the first adult
other than the accused to whom the child made statements describing the alleged
offense will not be treated as hearsay if certain requirements are met.  Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005).  Appellant claims the trial court abused its discretion in
admitting outcry testimony from Andrea Chatman because C.D.S. was thirteen
years old on the date of the charged offense, and because Cameron, not Chatman,
was the first adult to whom C.D.S. made statements describing the alleged
offense.








To
preserve a complaint for appellate review, a party must make a timely, specific
objection and obtain a ruling.  Tex. R.
Evid. 103(a)(1).  Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim.
App. 2002).  The error alleged on appeal must correspond to the objection made
at trial.  Id.  Because appellant failed to object to Chatman=s testimony in the trial court on either of the grounds now
asserted, these arguments are waived.  Tex.
R. App. P. 33.1(a).  Moreover, even if error had been properly preserved,
the improper admission of evidence is not reversible error if the same or
similar evidence is admitted without objection at another point in the trial.  Mayes
v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (en banc).   The record
demonstrates that Chatman testified regarding C.D.S.=s statements to her about the charged offense, and C.D.S.
offered substantially the same evidence without objection; thus, Chatman=s hearsay testimony was cumulative of other properly
admitted evidence.  See id.  We overrule appellant=s third issue.

D.      Ineffective Assistance
of Counsel

Appellant=s fourth, fifth, and sixth issues relate to the
effectiveness of his trial counsel.  We review claims of ineffective assistance
of counsel under the standard set forth in Strickland v. Washington, 466
U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under the Strickland
test, an appellant must prove (1) his trial counsel=s representation was deficient, and (2) the deficient
performance was so serious that it deprived the appellant of a fair trial.  Id.
at 687, 104 S. Ct. at 2064.  To establish both prongs, an appellant must prove
by a preponderance of the evidence that counsel=s representation fell below the objective standard of
prevailing professional norms, and there is a reasonable probability that, but
for counsel=s deficiency, the result of
the proceeding would have been different.  Id. at  690B94, 104 S. Ct. at 2066B68. 
An appellant=s failure to satisfy one prong
makes it unnecessary for a court to consider the other prong.  Id. at
697, 104 S. Ct. at 2069.  This test is applied to claims arising under the
Texas Constitution as well as those arising under the United States
Constitution.  Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986) (en banc).








Our
review of defense counsel=s
performance is highly deferential, beginning with the strong presumption that
the attorney=s actions were reasonably
professional and were motivated by sound trial strategy.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).  When, as in this case,
the record is silent as to trial counsel=s
strategy, we  will not conclude that defense counsel=s assistance was ineffective unless the challenged conduct
was A>so outrageous that no
competent attorney would have engaged in it.=@ Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim.
App. 2005) (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)).     

1.       Failure to Object to C.D.S.=s Testimony Regarding a Gun

In his
fourth issue, appellant contends his trial counsel was ineffective for failing
to object to C.D.S.=s
testimony that, during at least one episode of sexual abuse, appellant
exhibited a gun.  In order to argue successfully that his trial counsel=s failure to object to this testimony amounted to
ineffective assistance, appellant must show that the trial court would have
erred in overruling the attorney=s
objection to the testimony.  See Vaughn v. State, 931 S.W.2d 564, 566
(Tex. Crim. App. 1996) (en banc) (per curiam).  Appellant has identified no
specific objection that his trial counsel should have made, and offers no
argument or authority indicating that the trial court would have erred in
overruling an objection to this testimony.  This argument is therefore waived. 
See Tex. R. App. P. 38.1(h).

Appellant
next contends his trial counsel was ineffective because he failed to properly
impeach C.D.S. about the change in her testimony from the first trial to the
second trial.  The relevant testimony is as follows:

Defense Counsel:   Now,
do you recall having givenCpreviously giving sworn testimony in this case?

C.D.S.:                  Yes.

Defense Counsel:   And
in that sworn testimony, did you say anything about a gun?

C.D.S.:                  I
don=t think so.

Defense Counsel:   And
why are you suddenly now saying that there was a gun involved?

C.D.S.:                  Because
there was.

Defense Counsel:   And
when he would do this to you with the gun, what would he do with the gun?

C.D.S.:                  That
was one time.

Defense Counsel:   What
would he do with the gun, though?

C.D.S.:                  He
was holding it.

Defense Counsel:   So,
as he=s doing this to you, he was holding the gun?








C.D.S.:                  No. 
He put it down.  He was holding it as he got me out of bed. 

 

We
cannot agree that this cross-examination could not have been motivated by sound
trial strategy or represents conduct so outrageous that no competent attorney
would have engaged in it.  Although appellant insists that his counsel should
have impeached C.D.S. further, we are not persuaded that this gentler
cross-examination of a minor, who has allegedly been the victim of sexual abuse
almost since infancy and who was being cross-examined as the principal witness
in the prosecution of her father, falls outside the bounds of objectively
reasonable representation.  

Appellant
also contends that defense counsel erred by using the word Agun@ six
times in the exchange quoted above and by asking another witness if C.D.S. ever
spoke of a gun; however, appellant cites no authority for the proposition that
these actions could not constitute sound trial strategy.  

On the
record before us, we hold that appellant has failed to overcome the presumption
that his defense counsel=s
actions were reasonably professional and were motivated by sound trial
strategy.  We therefore overrule appellant=s
fourth issue.

2.       Failure to
Object to Extraneous Offense Evidence 

In his
fifth issue, appellant contends his trial counsel was ineffective for failing
to timely object to the introduction of extraneous offenses beyond the scope of
a pre-trial order.  The order at issue was the result of appellant=s pre-trial objections to the State=s identification of Ivy Biggs Syon and Andrea Chatman as
outcry witnesses.  The trial court partially sustained appellant=s objections to their testimony, and in a handwritten addition
to the court=s order, stated Awit. will on direct testify only to events of the last year
from the date of the outcry statement.@ 








Because
the appellant=s objection concerned only the
testimony of Syon and Chatman, the order partially granting his objection
pertained only to them, and not to the complainant.  On appeal, however, appellant
complains that his trial counsel failed to object to testimony from C.D.S. that
allegedly violated this order.  In support of this argument, appellant points
to the following exchange that occurred during a bench conference regarding
C.D.S.=s testimony:

Court:          [T]he
order is that . . . the witness will be allowed to testify
on direct only to the extent of the last year from the date of the outcry.  We=ve gone further than that
now.

State:                    Much
further.

Defense Counsel:   But
it=s getting too far.  It=s going further and
further.

State:                    I=m not talking about
extraneouses [sic].  I=m only talking about when she told somebody.

Defense Counsel:   This
thing is going to open wide open to everything, is what=s going to happen.

State:                    Is
that referring to a specific witness, though, Judge, that order?

Court:          Yes,
the complainant. 

State:                    Judge,
we would ask you to reevaluate your order based upon the testimony we=ve already had today. 
We=ve already gone into all the extraneouses [sic], what=s happened her whole
life in regard to this sexual abuse.

Defense Counsel:   We=ve not
gone into all that.  I mean, this was the first attempt by the State to elicit
information with regard to complaints that had occurred before that were
recanted.          

Appellant
complains that his defense attorney objected to C.D.S.=s testimony regarding extraneous offenses that were more
than a year old only on the grounds that the questions eliciting the testimony
were Aleading@;
according to appellant, his attorney should also have objected on the grounds
that C.D.S.=s testimony violated the
pretrial order.  

Despite
the trial court=s
misstatement, the order at issue limits the outcry testimony of Syon and
Chatman, but does not purport to limit C.D.S.=s
testimony regarding facts within her personal knowledge; thus the trial court
would not have erred in overruling an objection on such grounds.  See Vaughn,
931 S.W.2d at 566.  

We
overrule appellant=s
fifth issue.








3.       Totality of
Representation

In his
sixth issue, appellant argues that, considering the totality of his defense
attorney=s errors, he was denied the effective assistance of
counsel.  Specifically, appellant contends that three instances, taken
together, constitute ineffective representation.  

First,
appellant argues that his attorney was ineffective for failing to object to
C.D.S.=s testimony.  As explained above, appellant has not
demonstrated that his attorney failed to make a sustainable objection to this
evidence.  

Appellant
also complains that his trial counsel failed to successfully introduce an email
appellant printed from his computer.  Appellant testified that the email was
written by C.D.S.  After the State objected to the evidence on the grounds that
the defense had not presented a proper predicate for its admission, the trial
court conferred with counsel out of the jury=s
presence.  During that conference, the trial court asked how defense counsel
knew that C.D.S. had written the email, and defense counsel accurately
responded that appellant said only that he had retrieved it from his computer
and that the email bore C.D.S.=s
name.  The trial court asked, AWell,
isn=t it just as possible that he wrote this?  It=s his computer and her name is under A>Subject.=@ Appellant=s defense counsel responded, AI guess
anyone could have written it.@  The
trial court then sustained the State=s
objection.  The email is not in the record, and appellant does not contend that
another course of action by defense counsel would have rendered the evidence
admissible.  

Finally,
appellant complains in general terms about defense counsel=s failure to successfully introduce character evidence
regarding C.D.S. from appellant=s
adult daughter from a previous marriage.  The trial court sustained the State=s objection to this testimony as improper character
evidence.  See Tex. R. Evid. 404,
608(b).  Appellant does not contend that this ruling was erroneous, or explain
how his attorney could have successfully introduced this character evidence.  








Whether
considered individually or collectively, the defense attorney=s actions provide no basis on which to conclude that
appellant received ineffective assistance of counsel.  On this record, the
evidence is insufficient to overcome the presumption that appellant=s defense counsel provided reasonably professional
representation or to demonstrate prejudice attributable to these alleged
errors. 

We
overrule appellant=s
sixth issue.

IV.  Conclusion

We
conclude the evidence is factually sufficient to support the jury=s verdict.  We further hold that appellant has failed to
demonstrate that he received ineffective assistance of counsel.  Appellant=s remaining issues are waived; therefore, we affirm the
trial court=s judgment.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment
rendered and Memorandum Opinion filed March 1, 2007.

Panel
consists of Justices Anderson, Hudson, and Guzman.

Do Not
Publish C Tex. R. App. P.
47.2(b).    









[1]  In the record, this witness=s last name is spelled AChatman@ and AChapman.@  Because Chatman is the form used slightly more often
in the record, and the only form used in the briefs, we will use the name
stated by the parties.    





[2]    Ms. Syon is identified in the record
alternatively as Ivy Syon and Ivee Syon. 





[3]  Appellant=s
interview with McFarland took place at the Children=s Assessment Center (Athe Center@), and according to McFarland, the building houses
Children=s Protective Services caseworkers, the Child
Protective Services agency, forensic interviewers, a medical clinic, and a
psychology department in which children receive therapy.  According to
McFarland, appellant was not accused of a crime at that time.  After the
interviews, appellant left the Center, and no charges were filed for several
months.  There is no indication in the record that appellant=s presence at the Center was involuntary, or that he
believed his ability to leave was restricted at any time.  See Dowthitt v.
State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (stating that custody is
established if the manifestation of probable cause, combined with other
circumstances, would lead a reasonable person to believe that he is under
restraint to the degree associated with an arrest).